**In re George Alexander TRACEY, Barbara Kay Tracey, Debtors.**

**Bankruptcy No. 86–A–0481.**

United States Bankruptcy Court, D. Maryland, at Rockville.

Oct. 17, 1986.

**64**

Thomas Lackey, Chapter 13 Trustee.

John Somers, for debtors.

Anton Weiss, Washington, D.C., for Madison Nat. Bank.

B. Marvin Potler, Baltimore, Md., for Baltimore Federal Financial.

## MEMORANDUM OF DECISION

PAUL MANNES, Chief Judge.

Madison National Bank and Baltimore Federal Financial object to confirmation of debtors' proposed Chapter 13 plan. These creditors allege that the debtor's 72–year old mother is not a "dependent" for purposes of 11 U.S.C. § 1325(b)(2)(A) and that money used by debtors for her support should be devoted to plan payments. The court finds, absent a statutory definition of the word "dependent" in the Bankruptcy Code, that based on the facts and circumstances of this case debtor's mother is a "dependent" of debtor, as that word is used in § 1325(b)(2)(A).

1. One analysis of this case offers a conflict between this Code section and an older law (Exo-

### ISSUE

Is George Tracey's 72–year old mother his "dependent," as that word is used in 11 U.S.C. § 1325(b)(2)(A)? [1]

### FACTS

George Alexander Tracey and Barbara Kay Tracey, debtors, filed a Chapter 13 petition on March 18, 1986. Debtors claimed two dependents, their 18–year old son, Keith, and George Tracey's 72–year old mother, Helen, however, the debtors' Chapter 13 statement lists only Keith Tracey as a dependent. Helen Tracey, hereinafter referred to as "Mother," resides in a house owned by the debtors in McKees Rocks, Pennsylvania. The debtors reside in Gaithersburg, Maryland.

Madison National Bank ("Madison") and Baltimore Federal Financial ("Baltimore Federal") have filed objections to the confirmation of debtors' Chapter 13 plan. Madison is the holder of a $30,000 unsecured claim. Baltimore Federal is the holder of a claim secured by a first mortgage upon debtors' residence in Gaithersburg, Maryland. Both creditors allege that debtors do not propose to apply all their disposable income into the plan payments. They allege that the Mother is not a "dependent" of debtors under the Bankruptcy Code and therefore money used by debtors for her support should be devoted to the plan payments.

Debtors' Chapter 13 plan designates the Maryland real property with a $100,000 value and proposes to repay the $7,604 arrearage to Baltimore Federal at a rate of $158.80 a month. This payment, together with monthly payments outside of the plan, will bring Baltimore Federal current on its claim now in excess of $90,000. The plan also proposes to pay $4,800.00 over 48 months to holders of unsecured claims totaling $41,180.55. The home in McKees Rocks is subject to a first mortgage held by Norwest Financial. The plan indicates

dus 20:12).

the McKees Rocks home to be worth $22,-000 subject to the first mortgage of slightly less than $14,000. Debtors propose to cure the delinquency of $1,691 through the plan.

Debtor's Chapter 13 statement shows an obligation for a payment of $342 a month on the McKees Rocks home. The rental value of the property in which Mother lives is $175 a month. If the mortgage payment were not made, or if Mother paid the fair rental value of the property, there would be a substantially significant increase in the amount paid out to the unsecured creditors over the three-year statutory period.

In the course of the meeting of creditors held pursuant to 11 U.S.C. § 341, Mr. Tracey admitted to providing additional support (gifts) for his mother of between $100 and $400 per month. The gifts will not be considered in this opinion for three reasons:

1. The gifts were not reflected on the debtors' estimated average future expenses;

2. The proposed total monthly plan payment of $325.80 includes the funds in debtors' budget previously used for gifts.

3. Debtors' budget does not reflect any additional funds available for use to Mother other than the house payment.

The debtor, George Tracey, is the only child of his mother. Debtors claim Mother as a dependent on their federal income tax return. Mother receives $510 a month in social security. She has lived in the McKees Rocks home for 30 years.

## DISCUSSION

The court denies the objection to plan confirmation filed by Baltimore Federal Financial. As a secured creditor, Baltimore Federal has no standing to object on the ground that debtors have not devoted all disposable income to the plan.[2] Unlike the confirmation standards of § 1325(a), the ability-to-pay test may not be raised by the court *sua sponte*, nor may it be raised by the holder of only a secured claim or the holder of a claim which has not been allowed.[3]

The relevant portions of § 1325 provide:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

\*　　\*　　\*　　\*　　\*　　\*

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor.

These provisions are part of the new § 1325(b) which was added to the Bankruptcy Code by Congress in 1984.[4] Unfor-

---

**2.** *See* 11 U.S.C. § 1325(b)(1) (Supp.1986) (trustee or holder of an allowed unsecured claim can object to plan confirmation on basis of debtor's inability to pay). *See also* Petitioner's objection at 2–3, May 29, 1986. Although the objection is stated under grounds of lack of good faith, the substance of the objection makes inquiry into the debtors' ability to pay.

**3.** *See* 5 COLLIER ON BANKRUPTCY § 1325.08 at 1325–45 (15th ed. 1986).

**4.** One writer described the change as follows:
*Recent Legislation Regarding Section 1325*
　Prior to the 1984 Amendments, the tendency of the courts has been to weigh the debtor's

good faith intentions more heavily than the unsecured creditors's financial interest. However, by promulgating the addition of Section 1325(b), Congress has taken a considerable step towards placing more emphasis on creditor protection. With the addition of subsection (b)(1)(A), a court may not confirm a plan over the objection of an unsecured creditor unless the plan provides that the value of the property to be distributed to the unsecured creditor is not less than the amount of the creditor's claim, or, in compliance with subsection (b)(1)(B), that all of the debtor's disposable income for the entire three years of the plan will be applied to making creditor

tunately, Congress provided no explanation as to the meaning of the word "dependent." As a result, the court must employ other methods to determine the meaning of "dependent" as used in § 1325(b)(2)(A). The court will start with the background of the legislation.

■ This modification came into being because of the reaction of Congress to perceived abuses in Chapter 13 plans and more particularly the so-called "zero payment" and minimal payment plans. These plans permitted the debtor to wipe out sometimes undischargeable obligations such as student loans, as well as embezzlement or forgery debts, and assorted other miscreants through plans promising little or no payment to unsecured creditors. *See In re Terry,* 630 F.2d 634 (8th Cir.1980) (zero payment Chapter 13 plan cannot be filed in good faith). *See e.g., In re Estus,* 695 F.2d 311 (8th Cir.1982); *In re Rimgale,* 669 F.2d 426 (7th Cir.1982); *In re Carter,* 9 B.R. 140 (BC N.D.Ga.1981); *Matter of Prine,* 10 B.R. 87 (BC Idaho 1981); *In re Chase,* 28 B.R. 814, 818–19 (BC Md.1983). *Contra In re Chase,* 43 B.R. 739 (D.Md.1984).

The amount of support that debtors would devote under the plan for Mother is $175 a month, the fair rental value of the McKees Rocks property. The court finds nothing in the record to indicate any further funds available for her care. The mortgage payment on the McKees Rocks property benefits the debtors in building an equity and providing various deductions on their income tax returns. But regardless of whether debtors' contribution to Mother is $175 rental value or the $342 mortgage payment, this amounts to less than 50% of the funds required for Mother's support.

The court will attempt to divine what the intent of Congress was in the use of the word "dependent." Below are two federal definitions of "dependent" that apply to parents, such as under income tax laws at 26 U.S.C. § 152(a):

payments. The legislative history indicates that this amendment was largely in response to the concern that graduate students were incurring substantial education loan liabilities and then filing under Chapter 13 as an easy

§ 152. *Dependent defined.*

(a) *General definition.* For purposes of this subtitle [26 USC §§ 1 et seq.], the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer):

*       *   ,   *       *       *       *

(4) the father or mother of the taxpayer, or an ancestor of either.

26 U.S.C.S. § 152(a) (Law.Co-op.1984). Laws concerning medical and dental care for military personnel provide:

§ 1072. *Definitions*

(2) "Dependent," with respect to a member or former member of a uniformed services, means—

*       *       *       *       *       *

(E) a parent or parent-in-law who is, or was at the time of the member's or former member's death, in fact dependent on him for over one-half of his support and residing in his household.

10 U.S.C.S. § 1072 (Law.Co-op.1986).

The definitions stated above were crafted by Congress with defined policy in mind. For internal revenue purposes, unless a line is drawn as to the degree of support required in order to claim a parent as a dependent, there could be a substantial impact upon the revenue. Furthermore, such a line makes supervision of collection of taxes easier because Internal Revenue Service employees have a standard for rejection of unqualified exemptions. Likewise, the limitation on dependent medical care contained in Title 10 reflects Congressional policy providing for benefits for military personnel and their parents living in their household who are in fact in need of such help.

way out, despite a promising future for earning a steady income.
2 *Bankruptcy Developments Journal* 157–158 (1985). *See also,* Drake & Morris, *Chapter 13 Practice and Procedure* § 1104A, 572–576 (1985).

While it is true that under Pennsylvania law, 62 P.S. § 1973 (1968 ed.), the adult child's obligation to support a parent is limited to cases of indigency, state law does not provide the rule of decision in Chapter 13 confirmation hearings. The question is one of the existence of dependency in whole or substantial part. It appears from the record that Mrs. Helen Tracey cannot support herself and provide shelter on her monthly social security payment of $510. It is self-evident she requires some support. The issue is whether the partial support the debtors provide for her is from the debtors' disposable income. Unlike the cited sections from Titles 10 and 26, § 1325(b) focuses on the impact upon debtors and not upon the recipient. If Congress wished to create a threshold of 50% before the parental dependency factor could be considered, Congress would have used the same language as under other laws. It did not. The idea of a partial dependent is harmonious with the concept of Chapter 13 debt repayment in that the debtor is hard pressed to provide his own support aside from that of semi-dependent parents.

One purpose of the enactment of 11 U.S.C. § 1325(b) is to create a benchmark for judging debtors' efforts in cases where the trustee or unsecured creditors believe that debtors are not making their best effort to repay creditors and are therefore abusing the bankruptcy process. This is not the case with the Traceys who have filed this case in good faith.

The court believes that debtors allowing Mr. Tracey's mother to live in a property with a modest rental value of $175, in which she has lived for 30 years, is a contribution to the support of a person partially dependent upon debtors. The objections will be overruled.