**In re Gale R. RIGDON and Karen I. Rigdon, Debtors.**

**Bankruptcy No. 91–30281.**

United States Bankruptcy Court, S.D. Illinois.

Nov. 18, 1991.

Donald M. Samson, Trustee, Belleville, Ill.

Patrick McCann, Murphysboro, Ill., for debtors.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

After the death of their fourteen-year-old son, debtors Gale and Karen Rigdon filed a wrongful death action in Jackson County, Illinois, against David Slusher. The parties settled the matter, and on May 7, 1985, the court entered a "Final Settlement and Disbursement Order" approving the settlement. The order provided that Slusher would pay the debtors $142,000 in a structured settlement in exchange for the debtors' release of claims against him. After subtracting attorney's fees, the debtors were to receive $24,938 in 1985, $3,500 each year for the next nineteen years thereafter, and $31,000 in the twentieth year. In order to pay this structured settlement, an annuity contract was purchased with SAFECO Life Insurance Company. The debtors were the annuitants and Western States Insurance Company was the owner of the contract.

The debtors filed a joint petition for Chapter 7 bankruptcy relief on March 12, 1991. The debtors originally claimed as exempt property one annual payment from the annuity, $3,500, pursuant to Ill.Rev. Stat. ch. 73, ¶ 850 (1991).[1] On April 8, 1991, the trustee filed an objection to this exemption, asserting that the annuity was not exempt under Illinois law. This Court, on June 28, 1991, granted the debtors' re-

---

1. This remedial exemption provision of the Illinois Insurance Code is similar to Ill.Rev.Stat. ch. 110, ¶ 12–1001(f) (1991), a provision of the personal property exemption section of the Illinois Code of Civil Procedure.

quest for leave to file an amended exemption schedule. In the amended schedule, the debtors claim the proceeds of the annuity as exempt under four different provisions of the personal property exemption section of the Illinois Code of Civil Procedure, Ill.Rev.Stat. ch. 110, ¶ 12–1001 (1991).[2] The debtors assert that the entire proceeds of the annuity are exempt under either § 12–1001(f) or § 12–1001(h)(2). The debtors alternatively assert that $15,000 of the annuity is exempt under § 12–1001(h)(4) and $2,690 is exempt under § 12–1001(b). Although the trustee continues to object to the debtors' claimed exemption under sections 12–1001(f), 12–1001(h)(2), and 12–1001(h)(4), he concedes that the debtors are entitled to exempt $2,690 of the annuity under § 12–1001(b). Consequently, the question to be resolved is whether the debtors can claim the annuity as exempt under § 12–1001(f), § 12–1001(h)(2), or § 12–1001(h)(4).

Section 12–1001(f) exempts:

[a]ll proceeds payable because of the death of the insured and the aggregate net cash value of any or all life insurance and endowment policies and annuity contracts payable to a wife or husband of the insured, *or to a child, parent or other person dependent upon the insured ....*

Ill.Rev.Stat. ch. 110, ¶ 12–1001(f) (1991) (emphasis added). Under § 12–1001(f), the recipient of the annuity proceeds must be a wife or husband of the insured, or a child, parent or other person dependent upon the insured. There is no dispute the debtors were the parents of their deceased son. The initial issue is whether, under the terms of the statute, they must also have been dependent upon him.

The court in *In Re Schriar*, 284 F.2d 471 (7th Cir.1960) interpreted an identical phrase found in the exemption provision of the Illinois Insurance Code.[3] The issue was whether the debtor could claim as exempt the cash surrender value of life insurance policies payable to his nondependent adult children. *Id.* at 472. The court held that "dependent" modified both "child" and "parent" in the statute.[4] Like the court in *Schriar*, this court finds that "dependent" modifies "child" and "parent" in § 12–1001(f) such that a child or parent must be dependent upon the insured in order to benefit from the exemption.

In order to decide whether the debtors were dependent on their minor son for purposes of the exemptions here, the Court must first determine the meaning of "dependent" as used in the exemption provisions. No definition of "dependent" can be

---

**2.** Illinois has exercised its right under ¶ 522(b)(1) of the Bankruptcy Code, 11 U.S.C. ¶ 522(b)(1) (1991), to limit an Illinois debtor's choice of exemptions to those provided by state law. Ill.Rev.Stat. ch. 110, ¶ 12–1201 (1991); *In re Vogel*, 78 B.R. 192, 193 n. 2 (Bankr.N.D.Ill. 1987).

**3.** Section 850 of the Illinois Insurance Code, the statute under consideration in *Schriar*, provided:

All proceeds payable because of the death of the insured and the aggregate net cash value of any or all life and endowment policies and annuity contracts payable to a wife or husband of the insured, *or to a child, parent or other person dependent upon the insured ...* shall be exempt from execution, attachment, garnishment or other process, for the debts or liabilities of the insured....

Ill.Rev.Stat. ch. 73, ¶ 850 (1959) (emphasis added).

**4.** The court stated:

It is a "cardinal rule" in construction of a statute that effect should be given, if possible, to each word, clause and sentence. The in-

stant statute limits the beneficiaries "to a wife or husband of the insured, or to a child, parent or other person dependent upon the insured." The legislature used the words "or *other* person dependent upon the insured," not just or person dependent upon the insured. The word "other" cannot be discarded. The legislature clearly anticipated that child and parent were in the same class as "other person dependent upon the insured." The legislature must have intended that "dependent upon the insured" should modify child and parent, as well as "other person." Furthermore, this interpretation gives effect to the chief objectives of the exemptions laws, in that it protects the debtor in his subsistence, his family to whom he is obligated to support, and the public. Interpreting this statute liberally neither requires nor permits us to read into the statute that a beneficiary may be an adult son or daughter not dependent upon the debtor, where such meaning is simply not there.

*Schriar*, 284 F.2d at 474 (citation omitted).

found in the personal property exemption provisions of the Illinois Code of Civil Procedure. Likewise, the Bankruptcy Code fails to define "dependent," stating only that "dependent" includes a "spouse, whether or not actually dependent." 11 U.S.C. § 522(a)(1) (1991).

Both the Illinois legislature and Congress have specifically defined "dependent" in other statutes in which they have used the term.[5] In those statutes, "dependent" is generally defined as an individual, usually a relative, who relies upon the financial support of another. In most instances, the supporter has to contribute at least fifty percent of the individual's income in order to qualify as a "dependent."

State and federal courts have adopted a broader definition of "dependent" when interpreting statutes in which the term was not specifically defined. In making their decision, the courts have generally examined the purpose of the statute to be enforced. Under the Illinois Wrongful Death Act, for example, a finding of dependency by the court is necessary for the distribution of damages.[6] In this context, recovery based on dependency includes recovery not only for loss of financial support but also for loss of society. *Adams v. Turner*, 198 Ill.App.3d 353, 144 Ill.Dec. 521, 523, 555 N.E.2d 1040, 1042 (1990); *In re Estate of Wiese*, 178 Ill.App.3d 938, 128 Ill.Dec. 95, 96, 533 N.E.2d 1183, 1184 (1989). Loss of society encompasses, but is not limited to, deprivation of companionship, guidance, advice, and love. *Adams*, 198 Ill.App.3d 353, 144 Ill.Dec. at 524, 555 N.E.2d at 1043.

Federal courts, defining "dependent" in the context of the Bankruptcy Code, have looked to the purpose of the bankruptcy statutes as providing financial relief for the debtor. In *In re Tracey*, 66 B.R. 63 (Bankr.D.Md.1986), the issue was whether the 72-year-old mother of one of the debtors was a "dependent" for purposes of § 1325(b)(2)(A) of the Bankruptcy Code, which excepts from disposable income to be paid to creditors that income which is reasonably necessary for the support of the debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2)(A). The court, finding no definition of "dependent" in the Code, looked to two federal statutory definitions of "dependent" which applied to parents: first, the Income Tax Code definition which included a parent of the taxpayer who received over half of his or her support from the taxpayer, 26 U.S.C. § 152(a) (1986), and, second, the federal law concerning medical and dental care for military personnel, which also included as "dependent" a parent who was in fact dependent on his or her child for over one-half of his support

5. *See, e.g.,* Ill.Rev.Stat. ch. 48, ¶ 401(C) (defining "dependent" for purposes of the Illinois Unemployment Insurance Act); Ill.Rev.Stat. ch. 127, ¶ 523(h) (defining "dependent" for purposes of the Illinois State Employees Group Insurance Act); Ill.Rev.Stat. ch. 70, ¶ 72(e) (defining "dependent" for purposes of the Illinois Crime Victims Compensation Act); Ill.Rev.Stat. ch. 108½, ¶ 16–140(3), (5) (defining "dependent beneficiary" and "dependent parent" for purposes of determining survivors' benefits in state teachers' retirement annuities); Ill.Rev.Stat. ch. 48, ¶ 138.7 (Illinois Workers' Compensation Act). Federal statutes include: 10 U.S.C. § 2181(2) (defining "dependent" for purposes of educational assistance for members of the armed forces held as captives); 10 U.S.C. § 1032(d)(1) (disability and death compensation for dependents of members of the armed forces held as captives); 37 U.S.C. § 551 (defining "dependent" for purposes of payments to a missing member of a uniformed service); 30 U.S.C. § 902(a) (Black Lung Benefits Act); 5 U.S.C. § 8110(a) (compensation for dependents of government officers and employees); 5 U.S.C. § 8441(3) (defining "dependent" for purposes of survivor annuities of government officers and employees); 5 U.S.C. § 8901(9) (defining "dependent" for purposes of health insurance for government officers and employees); 42 U.S.C. § 3796b(2) (defining "dependent" for purposes of public safety officers' death benefits); 26 U.S.C. § 152 (the Internal Revenue Code, defining "dependent" for purposes of meeting one of the requirements in order to claim a deduction against gross income).

6. Section 2 of the Act provides:
The amount recovered in any such [wrongful death] action shall be distributed by the court in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person.
Ill.Rev.Stat. ch. 70, ¶ 2 (1991).

and who resided in the child's household, 10 U.S.C. § 1072(2)(E) (1986). *Tracey,* 66 B.R. at 66.

The mother in *Tracey* resided in a mortgaged house owned by the debtors. While the debtors claimed the mother as a dependent on their federal income tax return, their contribution to the mother's housing needs was less than fifty percent of the funds required for her support. *Tracey,* 66 B.R. at 65–66. The *Tracey* court compared the purposes of Titles 26 and 10 to the purpose of section 1325(b) of the Bankruptcy Code:

> The question is one of the existence of dependency in whole or substantial part. It appears from the record that [the mother] cannot support herself and provide shelter on her monthly social security payment of $510. It is self-evident she requires some support. The issue is whether the partial support the debtors provide for her is from the debtors' disposable income. Unlike the cited sections from Titles 10 and 26, § 1325(b) focuses on the impact upon debtors and not upon the recipient. If Congress wished to create a threshold of 50% before the parental dependency factor could be considered, Congress would have used the same language as under other laws. It did not. The idea of a partial dependent is harmonious with the concept of Chapter 13 debt repayment in that the debtor is hard pressed to provide his own support aside from that of semi-dependent parents.

*Id.* at 67. The court concluded that "allowing [the] mother to live in a property with a modest rental value of $175, in which she has lived for 30 years, is a contribution to the support of a person partially dependent upon [the] debtors." *Id.*

In *In Re Dunbar,* 99 B.R. 320 (Bankr. M.D.La.1989), the debtor listed nine dependents on his schedules, all of whom were either the children or grandchildren of a woman with whom he had been living for several years. A creditor objected to the debtor's discharge, alleging the nine children were not the debtor's dependents and that the debtor had thus submitted false schedules.

Like the court in *Tracey,* the *Dunbar* court lamented the lack of an explicit definition of "dependent" in the Bankruptcy Code. Noting that Congress has specifically defined "dependent" in other federal statutes "when the term was to be used in a particular manner for a particular purpose or in a manner other than its plain and usual meaning," the court concluded that without a statutory definition of "dependent," it had to use the plain, ordinary, contemporary, and common meaning of the word. *Dunbar,* 99 B.R. at 324. The court, therefore, interpreted "dependent" to mean "a person who reasonably relies on the debtor for support and whom the debtor has reason to and does support financially." *Id.* The court reasoned:

> [G]iven the cited underlying purpose of requiring the preparation and filing of the schedule of current income and expenses (so that the Court and the U.S. Trustee will have some document to analyze for purposes of making a § 707(b) determination), it makes sense that the term "dependent" be broadly construed, because a debtor who is reasonably supporting persons living in his household (even though not legally required to do so) simply will not have that money available to pay consumer debt.

*Id.* at 324–25.

The court in *Dunbar* stated further that its definition required "that the debtor have reason to provide support and that the claimed dependent have reason to rely on the debtor." *Id.* at 325 n. 3. In order to make this determination, a case by case analysis had to be made. *Id.* The *Dunbar* court specifically rejected the creditor's plea that the court adopt the definition of "dependent" used in the Internal Revenue Code, stating that it found "nothing in the Bankruptcy Code that suggest[ed] that the criteria that must be met before a 'dependent' can be claimed as a deduction against gross income are to be applied in determining whether a person is a 'dependent' for bankruptcy purposes." *Id.* at 325.

*In Re Collopy*, 99 B.R. 384 (Bankr. S.D.Ohio 1989) provides a somewhat different twist on this issue of dependency. In that case, the trustee objected to an exemption claimed by the Chapter 7 debtor. The debtor claimed the cash surrender value of a life insurance policy, of which her 85–year–old mother was the beneficiary, as exempt under an Ohio statute which exempted from the claims of creditors of the insured person any policy in which the beneficiary was " 'any relative dependent upon such person.' " *Id.* at 384 (quoting ORC § 3911.10). The trustee argued that the beneficiary-mother was not dependent upon the debtor.

The parties in *Collopy* agreed that the debtor's mother was not financially dependent upon the debtor. The court emphasized, however, that the mother was "entirely dependent upon her daughter in a physical sense." *Id.* The mother had glaucoma, so the daughter provided "transportation for marketing, banking and medical attention." *Id.* The court stated it was "a fair inference that the purpose of the life insurance policy [was] to make some provision for the physical needs of the mother in the event that debtor should predecease her." *Id.* Applying the principle that exemption statutes are to be liberally construed in the debtor's favor, the court concluded:

> [T]he word "dependent" [in the Ohio exemption statute] is not limited to financial dependence, but extends as well, at least in circumstances such as those present in this case, to a situation where the purpose of the insurance is to provide for a substitute means of caring for a dependent. To adopt the narrow interpretation of "dependent" urged by the trustee in this case would be to ignore the financial implications which would follow in the event that the insured here died and the beneficiary collected the proceeds of the policy.

*Id.*

It can be seen that the federal courts in *Tracey, Dunbar,* and *Collopy* all adopted a broad definition of "dependent." None of these courts used a specific percentage of

support to set a benchmark. In fact, the *Tracey* and *Dunbar* courts explicitly rejected the rigid fifty percent rule used in other federal statutes and made their decision by examining the purpose of the particular statute to be enforced. The court in *Dunbar* concluded that without a statutory definition of "dependent," it had to use the ordinary and common meaning of the term.

This Court agrees with the reasoning and analysis used in *Tracey* and *Dunbar.* Congress has not defined "dependent" in the Bankruptcy Code, and the Illinois legislature has not defined "dependent" for purposes of the exemption statute. Both legislative bodies, however, have intricately defined "dependent" in other statutes when they thought such a definition was necessary. Since neither Congress nor the Illinois legislature has deemed it necessary to define "dependent" for purposes of the issue before the Court, the Court concludes that the ordinary and common meaning of the word will suffice. It should be noted that the purpose of the exemption statutes is to give the debtor enough property and income to subsist and obtain a fresh start. *In the Matter of Barker*, 768 F.2d 191, 195 (7th Cir.1985); *In Re Van Iperen*, 819 F.2d 189, 191 (8th Cir.1987); *see In Re Johnson*, 57 B.R. 635, 639 (Bankr.N.D.Ill.1986); *In Re Dipalma*, 24 B.R. 385, 392 (Bankr.D.Mass.1982). Such statutes are to be liberally construed in the debtor's favor. *Barker*, 768 F.2d at 196; *Schriar*, 284 F.2d at 473. With this in mind, the Court holds that a "dependent," for purposes of § 12–1001 of the Illinois Code of Civil Procedure, is an individual who is supported financially, either directly or indirectly by another, and who reasonably relies on such support. This is a broad definition, and a factual finding of dependency will thus have to be made, after a hearing, on a case by case basis.

The Court chooses not to adopt the definition of "dependency" formulated by the Illinois courts for the Wrongful Death Act because the purpose of that Act is different from the purpose of the bankruptcy law. The purpose of the Wrongful Death Act is to compensate the family for

the loss of a loved one. *Elliott v. Willis*, 92 Ill.2d 530, 65 Ill.Dec. 852, 857, 442 N.E.2d 163, 168 (1982). That loss is not only the loss of financial support the deceased contributed to the household, but also the loss of companionship, love, and guidance the deceased gave to his or her family. Thus, "dependency" in a wrongful death context includes financial support and societal support.

In bankruptcy, however, the focus is on the financial problems of the debtor. Under the exemption statutes, the focus is on leaving the debtor enough income and property so that he or she may start over. Consequently, there is no reason to include societal support in a definition of dependency in a bankruptcy context because such support does not relate to the financial concerns of the debtor. Therefore, for purposes of the issue before the Court, "dependent" does not include societal support.

The definition of "dependent" this Court adheres to is not necessarily inconsistent with the decision in *Collopy*. In *Collopy*, the beneficiary-mother was not presently financially dependent on her debtor-daughter. The daughter, however, was providing her mother with vital services. If the daughter did not provide those services, the mother would have had to hire someone else to perform them. That was the purpose of the life insurance the daughter obtained. If the daughter predeceased her mother, then the life insurance proceeds could be used to hire someone to provide the mother with those necessary services. Consequently, the mother was indirectly financially dependent on her daughter, and the *Collopy* court recognized this and allowed the daughter's claimed exemption of the life insurance policy.

While the issue in *Collopy* is not before this Court and, therefore, this Court makes no decision with regard to that type of situation, *Collopy* is important for two reasons. First, it is another case in which a broad definition of "dependent" is used. Second, it shows that, despite the use of a broad definition of "dependent," there is still some financial underpinning or basis to the definition. *Collopy* does not drift off

into a definition of "dependent" which includes such nonmonetary items as guidance, love, and companionship.

The debtors point out that the Jackson County Circuit Court found that they were dependent upon their son when it approved the settlement in the wrongful death action. The settlement order states: "The Court ... finds that GALE RIGDON and KAREN RIGDON sustained a pecuniary loss by reason of the death of the decedent, JAMES RIGDON, and further finds that their respective dependency upon the decedent [is] ... 100%...." The debtors contend that this Court is bound by the circuit court's finding of dependency in the wrongful death action based on the principle of collateral estoppel. The four requirements for collateral estoppel are: 1) the issue sought to be precluded is the same as that involved in the prior action, 2) the issue was actually litigated in the prior action, 3) the determination of the issue was essential to the final judgment, and 4) the party against whom estoppel is invoked was fully represented in the prior action. *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir.1987). Collateral estoppel does not bar litigation of the issue of dependency before this Court because at least one of the collateral estoppel requirements was not met. The trustee, the party against whom the debtors are invoking estoppel, was neither a party to the wrongful death action nor represented in that prior action. The only parties to the wrongful death action were the debtors and Slusher.

Because at least one of the collateral estoppel requirements has not been met, the Court need not, and does not, resolve the question of whether the other three requirements have, in fact, been met. Nevertheless, the Court notes that it does not appear these other requirements were fulfilled either. For instance, the issue sought to be precluded—that is, dependency—is not the same as the dependency issue involved in the prior action. Since the Court has found that dependency for purposes of a wrongful death action is different than that for a bankruptcy proceeding,

the issue of dependency is not the same for both causes of action. Moreover, a consent judgment "normally do[es] not support an invocation of collateral estoppel," because the "issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 906 (7th Cir.1990).

The parties have not had an opportunity to present evidence as to whether the debtors were dependent on their minor child. Therefore, the Court will hold a hearing to give the parties this opportunity. Contrary to the trustee's contention in his memorandum, the debtors' counsel did not admit in open court, at the hearing on May 9, 1991, that the debtors were not dependent on their son.

■ It should be noted that the dependency must have occurred prior to the son's death. The issue is not whether the debtors are now dependent on the annuity payments from the wrongful death action. The issue is whether the debtors were dependent on their son prior to his death. This distinction is best illustrated by § 12–1001(h)(2) of the Illinois Code of Civil Procedure. That section exempts "a payment on account of the wrongful death of an individual of whom the debtor was a dependent, to the extent reasonably necessary for the support of the debtor." Ill. Rev.Stat. ch. 110, ¶ 12–1001(h)(2) (1991). Under this statute, a court must first determine whether the debtor was dependent upon the deceased. Only after an affirmative answer to that question does a court delve further to determine to what extent the payment for the wrongful death is reasonably necessary for the debtor's present support. Thus, "dependency" does not include the debtor's present need for the income or property at issue. The Illinois legislature would not have used two different phrases—"dependent" and "to the extent reasonably necessary for the support

of the debtor"—if it intended the terms to have the same meaning.

The debtors claimed the annuity as exempt under three different sections of the Illinois Code of Civil Procedure: 12–1001(f), 12–1001(h)(2), and 12–1001(h)(4). The parties dispute which of the statutes are applicable in this case. Because all three statutes require the debtors to be dependent upon their son,[7] the Court need not decide at this time which statute or statutes do in fact apply, if any.

In conclusion, the Court will hold a hearing on the issue of whether the debtors were dependent upon their son based on the definition of "dependent" established in this opinion. Should the Court find the debtors dependent for purposes of the statute, the hearing will continue on the issue of which, if any, of the three statutes is applicable. Finally, should the Court find that § 12–1001(h)(2) applies, the hearing will continue further on the issue of to what extent the annuity is reasonably necessary for the support of the debtors. Since the trustee does not object, the debtor will be granted an exemption of $2,690 of the annuity pursuant to § 12–1001(b), Ill.Rev.Stat. ch. 110, ¶ 12–1001(b) (1991), regardless of the outcome of the hearing.

See written order entered even date.

---

7. Section 12–1001(h)(4) exempts "a payment, not to exceed $7,500 in value, on account of personal bodily injury of the debtor or an individual of whom the debtor was a dependent."

Ill.Rev.Stat. ch. 110, ¶ 12–1001(h)(4) (1991). Sections 12–1001(f) and 12–1001(h)(2) were quoted earlier.