**In re Ophelia G. PEACOCK, Debtor.**

No. 01–39065.

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

Aug. 23, 2002.

594

Matthew J. Thompson, Columbus, OH, for debtor.

James R. Warren, Springfield, OH, Chapter 7 Trustee.

*OPINION AND ORDER SUSTAINING TRUSTEE'S OBJECTION TO EXEMPTION*

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

The contested matter before the Court arises from the Objection by Trustee to Debtor's Claim of Exemption (the "Objection") filed by James R. Warren, Chapter 7 Trustee (the "Trustee"), and the Response (the "Response") filed by the debtor, Ophelia G. Peacock ("Peacock" or

"Debtor"). The Trustee objects to Peacock's claim of an exemption in a life insurance policy (the "Policy") issued by Union Central Life Insurance Company ("Union Central"). The Court conducted a hearing on the Objection and Response on April 30, 2002 (the "Hearing"). At the conclusion of the Hearing, the Court directed counsel to brief the question of whether the beneficiaries named in the Policy—Peacock's mother and aunt—constitute "dependents" of the Debtor for purposes of Ohio Revised Code ("O.R.C.") § 3911.10. If the Policy's beneficiaries are found to be "dependents" of the Debtor, then, under O.R.C. § 2329.66(a)(6)(B), the cash surrender value of the Policy will be exempt from administration as an asset of the estate.

Having considered the evidence, arguments of counsel, and the parties' post-Hearing briefs, the Court makes the following findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52 (made applicable here by Fed. R. Bankr.P. 7052 and 9014).

### I. Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

### II. Factual and Procedural Background

Peacock is a 67–year old widow. She suffers from oral and breast cancer. Peacock works as a nursing assistant and also receives social security and pension income. Her bankruptcy schedules list $36,406 in unsecured debt, primarily for medical services and credit card obligations. On Peacock's Schedule C—Exempt Property, she claims a $1000 exemption in the Policy pursuant to O.R.C.

§ 2329.66(A)(6)(b).[1] The Policy, which was issued to Peacock by Union Central on December 15, 1978, provides for payment of a $10,000 death benefit. The Policy's cash surrender value as of December 26, 2001 was $2,811.16.[2]

The Trustee's bare bones Objection simply states that the Debtor's claimed exemption in the Policy should be disallowed "because it does not appear that said policy qualifies as exempt." Objection at 1. In her Response, Peacock argues that the Policy was obtained to pay her burial expenses, and that in order to turn over the Policy's cash surrender value, she would be required either to take out a policy loan, which she is incapable of repaying, or surrender the Policy. According to Peacock, given her current medical condition, she will be unable to obtain a replacement policy to pay for her burial expenses.

At the Hearing, Peacock testified that she took out the Policy to defray her burial costs, thereby ensuring that her mother and/or aunt will not have to bear these expenses. The Debtor further testified that neither Policy beneficiary resides with her: Peacock's mother is married and lives in Columbus, Ohio, and her aunt lives in Baltimore, Maryland. Peacock conceded that she provides no financial support to her mother or her aunt. Nor does she care for or provide personal services to the Policy beneficiaries.

### III. Legal Analysis

■ The various types of property that a debtor may exempt from the reach of creditors are listed in O.R.C. § 2329.66.[3] Exemptions serve the public policy of protecting the debtor's family and maintaining its basic needs. *Daugherty v. Central Trust Co.*, 28 Ohio St.3d 441, 447, 504 N.E.2d 1100, 1104–05 (1986) ("[T]he long-standing purpose of Ohio's exemption statute is to protect from creditors' legal process those debtors with minimal assets '... for the benefit of the children as well as for the parents, in order that the children ... may be protected against the dangers to which they would be exposed without those household facilities which make the family relation possible....'" (quoting *Dennis v. Smith*, 125 Ohio St. 120, 125, 180 N.E. 638, 640 (1932))); *Slutsky v. Bess (In re Bess)*, 40 B.R. 509, 510 (Bankr.S.D.Ohio 1984) ("[T]he courts of Ohio, for the purpose of maintaining the home, and insofar as possible, preventing pauperism and illiteracy, have uniformly given a liberal construction to all exemption statutes for the benefit of the debtor's family." (quoting *In re Weick*, 2 F.2d 647, 648 (6th Cir.1924))). Exemption statutes are to be construed liberally and in the debtor's favor. *In re Bush*, 253 B.R. 863, 865 (Bankr.S.D.Ohio 2000) (Caldwell, J.) ("[It is a] well-established principle that exemption statutes are to be construed liberally, and in favor of the debtor."); *In re Shaffer*, 228 B.R. 892, 895 (Bankr. N.D.Ohio 1998) ("[W]hen doubt exists as to the intent of the statute, the interpretation should be construed in favor of the debtor.").

1. It is unclear why the Debtor limited her exemption claim to the $1,000 amount set forth in Schedule C. This limitation may have been based on a mistaken belief that the Policy's cash surrender value did not exceed that amount.

2. Following the Hearing, and without objection by the Debtor, the Trustee supplemented the record by submitting a letter from Union Central stating the cash surrender value of the Policy as of December 26, 2001.

3. Ohio has exercised its right under § 522(b)(1) of the Bankruptcy Code to "opt out" of the federal exemption scheme, thereby limiting an Ohio debtor's exemptions to those provided by state law. *See* Ohio Rev.Code Ann. § 2329.66(A)(17) (Anderson 2001).

■ A claimed exemption is presumptively valid. *Carter v. Anderson (In re Carter)*, 182 F.3d 1027, 1029 n. 3 (9th Cir.1999); *see In re Patterson*, 128 B.R. 737, 740 (Bankr.W.D.Tex.1991). When an exemption has been claimed, it is the objecting party's burden—here, the Trustee—to prove that the exemption is not properly claimed. Fed. R. Bankr.P. 4003(c); *In re Parker*, 219 B.R. 972, 974 (Bankr.S.D.Ohio 1998) (Clark, J.); *In re Erbaugh*, 199 B.R. 367, 369 (Bankr. S.D.Ohio 1996) (Clark, J.). This means that the objecting party initially has the burden of production and the burden of persuasion. *Carter*, 182 F.3d at 1029 n. 3; *Gregory v. Zubrod (In re Gregory)*, 245 B.R. 171, 174 (10th Cir. BAP 2000). The objecting party must offer evidence to rebut the presumptively valid exemption. *Id.; In re Peterson*, 280 B.R. 886, 889–90 (Bankr.S.D.Ala.2001); *Lester v. Storey (In re Lester)*, 141 B.R. 157, 161 (S.D.Ohio 1991). If the objecting party produces evidence to rebut the exemption, the burden of production shifts to the debtor to demonstrate the propriety of the claimed exemption. *Carter*, 182 F.3d at 1029 n. 3; *Walsh v. Hendrickson (In re Hendrickson)*, 274 B.R. 138, 149 (Bankr.W.D.Pa. 2002) ("The burden of production is a shifting one when there is an objection to a claimed exemption."). The burden of persuasion always remains with the objecting party. *Carter*, 182 F.3d at 1029 n. 3; *Hendrickson*, 274 B.R. at 149; *In re Lar-*

son, 260 B.R. 174, 186 (Bankr.D.Colo. 2001).

■ Among the exemptions afforded to debtors by the Ohio legislature is an "interest in contracts of life or endowment insurance or annuities, as exempted by section 3911.10 of the Revised Code." Ohio Rev.Code Ann. § 2329.66(A)(6)(b) (Anderson 2001). Section 3911.10 reads, in relevant part:

> All contracts of life or endowment insurance or annuities upon the life of any person, or any interest therein, which may hereafter mature and which have been taken out for the benefit of, or made payable by change of beneficiary, transfer, or assignment to, the spouse or children, *or any persons dependent upon such person* ... shall be held, together with the proceeds or avails of such contracts, subject to a change of beneficiary if desired, free from all claims of the creditors of such insured person or annuitant.

Ohio Rev.Code Ann. § 3911.10 (Anderson 2001) (emphasis added). Here, the pivotal issue is whether, for purposes of O.R.C. § 3911.10, the Debtor's mother and aunt should be deemed "dependents." If they are found to be "dependents" for purposes of § 3911.10, then the Policy will be exempt from property of the estate and its cash surrender value beyond the reach of the Trustee.

No definition of the term "dependent" is provided in either O.R.C. § 2329.66 or § 3911.10.[4] Likewise, the exemption provi-

---

4. The Ohio legislature has expressly defined "dependent" in other statutes in which the term is used. *See, e.g.,* Ohio Rev.Code Ann. § 145.43 (Anderson 2001) (defining "dependent" for purposes of determining qualifying beneficiaries of members of the Public Employees Retirement System); Ohio Rev. Ohio Ann. § 146.01 (Anderson 2001) (defining "dependent" for purposes of determining eligibility for benefits from Volunteer Fire Fighters' Dependent Fund); Ohio Rev.Code Ann.

§ 2323.58 (Anderson 2001) (defining "dependent" in connection with regulation of transfers of structured settlement payment rights); Ohio Rev.Code Ann. § 3307.562 (Anderson 1999) (defining "dependent" for purposes of determining eligible recipients of benefits from State Teachers Retirement System if designated beneficiary predeceases a participant in the system); Ohio Rev.Code Ann. § 3924.01 (Anderson 2001 Supp.) (defining "dependent" in connection with regulation of

sions set forth in § 522 of the Bankruptcy Code contain no definition of the word "dependent," except to the extent of stating that a "dependent" "includes a spouse, whether or not actually dependent." 11 U.S.C. § 522(a)(1). Further, the parties have not supplied, nor has the Court's independent research revealed, case law from an Ohio state court addressing the issue of who qualifies as a "dependent" for purposes of O.R.C. § 3911.10.

In *In re Rigdon*, 133 B.R. 460 (Bankr. S.D.Ill.1991), an Illinois bankruptcy court dealt with the question of whether, under the Illinois exemption statute, the Chapter 7 debtors qualified as "dependents" of their minor son. The debtors in *Rigdon* claimed an exemption in the proceeds of a wrongful death action arising from the death of their son. Reviewing the definitions of "dependent" found in various state and federal statutes, the court found that a "dependent" generally is defined as an individual, usually a relative, who relies upon the financial support of another. *Id.* at 463. The *Rigdon* court noted that, in most cases, to qualify as a "dependent," the person in question must receive over half of his or her financial support from the supporting party. *Id.* at 463–465.

In *In re Collopy*, 99 B.R. 384 (Bankr. S.D.Ohio 1989), Judge Perlman interpreted the term "dependent" broadly, holding that it may encompass certain relationships in which there is no direct financial dependency between the parties. There, the debtor sought to exempt the cash surrender value of a life insurance policy in which her mother was named beneficiary. The parties agreed that the debtor's mother was not financially dependent upon the debtor, but that she was entirely dependent upon her daughter "in a physi-

cal sense, for the daughter provide[d] transportation for marketing, banking and medical attention." *Id.* at 384. It was necessary for the debtor to provide these services because her mother suffered from glaucoma. The court concluded that it was "a fair inference that the purpose of the life insurance policy [was] to make some provision for the physical needs of the mother in the event that debtor should predecease her." *Id.* Applying the principle that exemption statutes are to be liberally construed in the debtor's favor, the *Collopy* court concluded:

> [T]he word "dependent" at ORC § 3911.10 is not limited to financial dependence, but extends as well, at least in circumstances such as those present in this case, to a situation where the purpose of the insurance is to provide for a substitute means of caring for a dependent. To adopt the narrow interpretation of "dependent" urged by the trustee in this case would be to ignore the financial implications which would flow in the event that the insured here died and the beneficiary collected the proceeds of the policy.

*Id.*

Here, Peacock conceded that she provides no financial support whatsoever to either of the Policy's beneficiaries. Nor does the Debtor provide her mother or aunt with the vital services that established a dependency relationship in *Collopy*. No evidence was presented demonstrating that the Policy's beneficiaries rely on the Debtor to care for their physical needs. Thus, the indirect financial dependence that characterized the relationship between the debtor and her mother in *Collopy* has not been shown to exist in this case.

"Small Employer Health Benefit Plans"); Ohio Rev.Code Ann. § 4141.30 (Anderson 2001) (defining "dependent" in connection with the establishment of various "dependency" classes used to calculate amount of weekly unemployment compensation benefits).

The bankruptcy court in *In re Brown*, 133 B.R. 860 (Bankr.N.D.Ohio 1991) faced the identical issue presently before the Court in a case involving a similar fact pattern. There, the debtor testified that she took out a life insurance policy to pay her funeral expenses because her mother could not afford to do so. The trustee objected to the debtor's claim that the cash surrender value of the life insurance policy was exempt under O.R.C. § 3911.10, asserting that the debtor's mother was not a "dependent" within the meaning of the statute. The debtor in *Brown* lived with her mother, but did not pay rent. She purchased the household's groceries, provided transportation to her mother, and paid for her mother's annual trip to Florida to visit the debtor's grandmother. Considering the facts in light of the holding of *Collopy*, the court held that the debtor's mother was not a "dependent" for purposes of O.R.C. § 3911.10, reasoning:

> [T]he testimony adduced at the Hearing indicates that [debtor's mother] is not financially dependent upon [debtor]; though [debtor's mother] may very well be physically dependent upon [debtor] for transportation due to her arthritis. These facts are similar to the situation in *Collopy*. However, the similarity stops there. A review of the testimony reflects that the policy was not taken out to provide a substitute means of support for [debtor's mother] in the event of [debtor's] death, but rather, was taken out for the purposes of burial.

> This Court is unwilling to extend the meaning of dependency to cover this situation. [Debtor's mother's] testimony taken as a whole indicates that the maintenance of the home would not be in

jeopardy if the life insurance policy becomes an asset of the estate.

*Id.* at 862 (emphasis added). Just as in *Brown*, the record here falls short of establishing a dependency relationship between the Debtor and the Policy beneficiaries. No evidence was presented establishing that the Policy was purchased by the Debtor for purposes of providing support for her mother and/or aunt upon her death. Rather, Peacock admitted that the Policy was taken out to pay for burial costs. To hold, on these facts, that the Policy beneficiaries are "dependents" of the Debtor would extend the concept of dependency well beyond its logical limits.[5]

█ Peacock's argument in support of her claimed exemption is based entirely on the principle that exemption statutes are to be construed liberally. But the Debtor's own testimony established that her relationship with the Policy's beneficiaries is such that they are not financially or otherwise dependent upon her. Thus, while the Court is very sympathetic to the Debtor's plight, it cannot create an exemption from whole cloth under the rubric of liberality. The Ohio legislature has provided an exemption for burial lots, *see* Ohio Rev.Code Ann. § 2329.66(a)(8) (Anderson 2001), but has not chosen to permit debtors to exempt funds earmarked for burial expenses. While the wisdom of this policy decision may be questioned, the Court is

> not free, in interpreting this statute, simply to rewrite it on grounds we are thereby improving the law. R.C. 2329.66 exempts certain funds of a debtor only from the use of judicial process by creditors in execution, garnishment,

---

5. Insofar as the existence of a dependency relationship is concerned, the facts here are much less compelling than those presented in *Brown*. In *Brown*, the debtor provided transportation to her mother, who suffered from arthritis. She also paid for the household's grocery expenses. Peacock offered no testimony or other evidence establishing that she made any provision whatsoever for the financial or physical needs of her mother or aunt.

attachment or sale to satisfy a judgment or order. It is not the function of this court to create a right of exemption ... where none is found in the statute. Rather if there is to be a resolution of this dilemma, it must come from our legislature.

*Daugherty,* 28 Ohio St.3d at 447–48, 504 N.E.2d at 1105 (citations omitted). In sum, because the legislature has not seen fit to define "dependents" to include family members who may ultimately be responsible for burial expenses, and because there is no exemption provided for assets or other funds set aside to pay burial expenses, the Court is unable to grant the relief requested.

## IV. Conclusion

Having elicited testimony from Peacock that she provides no support—financial or otherwise—for the Policy's beneficiaries, the Trustee has met his burden of proving the exemption was not properly claimed. The Debtor has failed to rebut the prima facie case made by the Trustee that her mother and aunt do not qualify as "dependents" under O.R.C. § 3911.10.

Accordingly, the Trustee's Objection to Debtor's Claim of Exemption is **SUSTAINED**.

**IT IS SO ORDERED**.