**In re William DUNBAR, Debtor.**

**LESLIE WOMACK REAL ESTATE, INC., Plaintiff,**

**v.**

**William DUNBAR, Defendant.**

**Bankruptcy No. 87–01726.
Adv. No. 88–0007.**

United States Bankruptcy Court,
M.D. Louisiana.

April 21, 1989.

Kenneth S. Womack, Baker, La., for plaintiff.

C. Glenn Westmoreland, Baton Rouge, La., for defendant.

## REASONS FOR DECISION

LOUIS M. PHILLIPS, Bankruptcy Judge.

### Jurisdiction of the Court

This is a proceeding arising under Title 11 of the United States Code. The United States District Court for the Middle District of Louisiana has original jurisdiction pursuant to 28 U.S.C. § 1334(b). By Local Rule 29, under the authority of 28 U.S.C. § 157(a), the United States District Court for the Middle District of Louisiana referred all such cases to the Bankruptcy Judge for the district and ordered the Bankruptcy Judge to exercise all authority permitted by 28 U.S.C. § 157.

This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(J). Pursuant to 28 U.S.C. § 157(b)(1) and the general reference by the District Court, the Bankruptcy Judge for this district may hear and determine all core proceedings arising under Title 11 or in a case under Title 11 and may enter appropriate orders and judgments thereupon.

No party has objected to the exercise of jurisdiction by the Bankruptcy Judge. No party has filed a motion for discretionary abstention pursuant to 28 U.S.C. § 1334(c)(1) or pursuant to 11 U.S.C. § 305. No party filed a timely motion for mandatory abstention under 28 U.S.C. § 1334(c)(2). No party has filed a motion under 28 U.S.C. § 157(d) to withdraw all or part of the case or any proceeding thereunder, and the District Court has not done so on its own motion.

### The Proceeding

The defendant, William Dunbar, filed a voluntary Chapter 7 bankruptcy petition on October 13, 1987. Plaintiff, Leslie Womack Real Estate, Inc., is a creditor of Mr. Dunbar for the total sum of $5,890 plus interest and costs. The plaintiff filed this complaint objecting to the debtor's discharge under 11 U.S.C. § 727(a)(4)(A) on January 13, 1988, alleging that the debtor knowingly and fraudulently made false statements in his schedule of current income and current expenditures (which 11 U.S.C. § 521 and Bankruptcy Rule 1007(b)(1) require to be filed in Chapter 7 liquidation cases).

The false oaths allegedly sworn by Mr. Dunbar are: (i) the representation that his monthly take-home pay was $650.00, when, in fact, his gross wages as of the date of the § 341(a) meeting of creditors were some $480.00 per week; and (ii) the claim of nine dependents though all were either children or grandchildren of Ms. Joyce Roberson, with whom Mr. Dunbar had been living without the benefit of marriage for some years. Trial of this proceeding took place on July 1, 1988, with the parties proceeding upon a stipulated record consisting of documentary evidence and a transcript of the § 341(a) meeting of creditors in this case.

### Facts

The debtor's schedule of current income and expenses indicates that his monthly take-home pay is $650 per month. At the § 341(a) meeting of creditors, Mr. Dunbar testified that as of that date his gross wages were approximately $480.00 per week. According to plaintiff's Exhibit 8, the debtor's take-home pay for the week preceding the date of the schedule of current income and expenses (which was signed on October 9, 1987) was $181.83 per week.

Regarding the claim of dependents, the debtor lists the following dependents on the schedule of current expenses:

(1) Van Roberson—18 years old;

(2) Lisa Roberson—17 years old;

(3) Tina Roberson—16 years old;

(4) Shalot Roberson—23 years old;

(5) Gregory Roberson—22 years old;

(6) Michael Roberson—20 years old;

(7) Alvin Roberson—19 years old;

(8) Candy Roberson—3 years old;

(9) Yolanda Roberson—1 year old.

At the § 341(a) meeting, the debtor testified that four of the children were in high school, two were working (Michael—

$3.75/hr.; Shalot—$3.45/hr.), one was unemployed, and the remaining two minor dependents were the grandchildren of Ms. Joyce Roberson. The debtor testified that he was not married. As an introduction to the § 341(a) meeting, the debtor's attorney explained that Mr. Dunbar and Joyce Roberson were and had been living together for some time in a relationship which would likely be considered a common law marriage in any other state (in fact, the § 341(a) meeting in this case was held contemporaneously with the § 341(a) meeting in Ms. Roberson's case (case no. 87–01727), with Ms. Roberson answering some questions and Mr. Dunbar answering some questions). While the record is not clear, apparently none of the children are actual bloodline relations of Mr. Dunbar. However, it is undisputed that all of the children resided with the debtor and Ms. Roberson at the time the petition was filed. Likewise, there is no evidence to dispute the assertion that Mr. Dunbar in fact utilized his income to provide actual support for the claimed dependents.

### Applicable Law

■ Section 727(a)(4)(A) provides in part as follows:

> (a) The court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case ... made a false oath or account;

11 U.S.C. § 727(a)(4)(A). "The primary purpose of Section 727(a)(4)(A) of the Bankruptcy Code, and its predecessor, Section 14(c)(1) of the Bankruptcy Act, is to ensure that dependable information is supplied for those interested in the administration of the bankruptcy estate on which they can rely, without the need for the trustee or other interested party to dig out the true facts in exhaustive examinations or investigations." *In re Gonday*, 27 B.R. 428, 432 (Bankr.M.D.La.1983). However, as "the statutory right to discharge should ordinarily be construed liberally in favor of the debtor," *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987), "[t]he reasons for denying a discharge to a bankrupt must be real and substantial, not merely technical and con-

jectural." *Dilworth v. Boothe*, 69 F.2d 621, 624 (5th Cir.1934). Therefore, the Court must find that the debtor made a statement containing matter which he knew to be false, and that the statement was made willfully with the intent to defraud creditors. *Humphries v. Nalley*, 269 F. 607 (5th Cir.1920).

The requirement that the false oath be knowingly and willfully made with intent to defraud, in light of the policy embraced by the jurisprudence of construing the right to discharge liberally in favor of the debtor, has led courts to place something of a judicial gloss on the statute and to require that the false oath relate to a "material fact" or "material matter." *See, e.g., Tully*, 818 F.2d at 110 ("Under § 727(a)(4)(A), the debtor can be refused his discharge only if he (i) knowingly and fraudulently made a false oath, (ii) relating to a material fact."); *In re Agnew*, 818 F.2d 1284, 1290 (7th Cir.1987) ("false oath under section 727(a)(4)(A) must relate to a material matter before it may bar a discharge"); 4 *Collier on Bankruptcy*, para. 727.04[1], at 727–57 (15th Ed.1988) ("The false oath must have related to a material matter."). While the jurisprudence is replete with single-phrase reiterations of the material fact or matter requirement, the attempts at defining just what a "material fact" or "matter" is reveal that the "materiality requirement" is probably surplusage.

A leading bankruptcy commentator has described the determination of materiality as follows:

> In determining whether or not an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition.

*Collier on Bankruptcy, supra*, at 727–58. A circuit court has stated that "[t]he sub-

ject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984) (citations omitted).[1] These definitions show that the "materiality" requirement, though providing the *appearance* of increasing the plaintiff's burden of proof and restricting situations in which discharge will be denied for false oaths, is basically not limiting. By requiring that an omission or untruth be "material," the courts are merely enforcing the persuasion that discharge not be denied on the basis of mere technicality or matters of form and have established the plaintiff's burden as the demonstration that the defendant possessed the intent at the time the statement was made to knowingly and fraudulently hinder the administration of the bankruptcy estate. To be simple and blunt (or bluntly simplistic), if a false oath can have no effect on the administration of the estate, it is difficult to impute fraudulent intent (as the false oath will doubtless be related simply to matters of technicality or form).

■ The plaintiff, Leslie Womack Real Estate, Inc., filed the complaint in this proceeding upon allegedly false statements made in the debtor's schedule of current income and expenditures. Before addressing the issue of whether the statements were false, and made "knowingly and fraudulently," the Court must first find that an untruth or an omission in a debtor's schedule of income and current expenditures can be material so as to give rise to a denial of discharge under § 727(a)(4)(A). Although an untruth in this particular statement would rarely, if ever, affect the trustee's ability to discover assets or investigate the debtor's pre-bankruptcy dealings and financial condition, this Court finds that an untruth within this schedule can relate to a material matter sufficient to bar a debtor's discharge. This conclusion is based upon the underlying purpose of the schedule:

> The duty of the debtor to file a schedule of current income and current expenditures, unless the court orders otherwise, was added to section 521(1) by the Bankruptcy Amendments and Federal Judgeship Act of 1984. Section 707(b), also added by the 1984 Act, authorizes the court on its own motion to dismiss a chapter 7 case filed by an individual with primarily consumer debts if it finds that the granting of relief would be a "substantial abuse" of the provisions of chapter 7. "Substantial abuse" is not defined. However, the schedule of current income and current expenditures should be of assistance to the court in determining whether a debtor is likely to be able to pay a substantial portion of the debts out of future income without difficulty. If the court found that to be the situation, it would dismiss the case under section 707(b).

*Collier on Bankruptcy, supra*, para. 521.-06[4] (footnote omitted). The problematic § 707(b)[2] can only serve its espoused purpose if the schedule of income and expenses contains truthful information. Therefore, as the U.S. Trustee or the Court (not on the suggestion of any other party) are dependent upon the schedule, false statements therein can constitute false oaths relating to material facts or matters sufficient to bar discharge under

---

**1.** It is generally accepted that a creditor does not have to show that it was detrimentally affected by a false oath in order to bar the debtor's discharge. For example, the *Chalik* court upheld a debtor's denial of discharge for failing to list information pertaining to twelve corporations in which he had been an officer, director or major stockholder, notwithstanding that the concealed information may not have revealed assets available for creditors or otherwise increased the value of the estate. Therefore, the actual financial consequence to the estate which would have resulted if there had been no false oath need not be materially favorable. Rather, the Court is charged with the duty of determining whether the false oath concerned a matter which was material to the efficient, reliable and complete administration of the estate of the debtor.

**2.** For lyrical expression of the confusion shared by at least this Court and one other, *see In re Love*, 61 B.R. 558 (Bankr.S.D.Fla.1986).

§ 727(a)(4)(A) in the event they are made knowingly and fraudulently, as they can materially impair the ability of the Court or the U.S. Trustee to make a determination as to whether a § 707(b) motion is appropriate.

## Discussion
### The Claim of Dependents

As noted above, the plaintiff has made two allegations of false statements with respect to Mr. Dunbar's schedule of current income and expenditures. The first allegation concerns the debtor's listing of the nine dependents. The plaintiff makes much of the fact that these same nine dependents are listed on the bankruptcy petition of Joyce Roberson (recall the almost joint nature of the petitions). However, the plaintiff has not disputed the fact that all nine persons actually reside in the home of the debtor and Joyce Roberson.

Bankruptcy Rule 1007(b)(1) requires that a Chapter 7 debtor file a schedule of current income and expenditures, prepared as prescribed by Official Form No. 6A. Subsection A(3) of the form requires the debtor to list the dependents which "the debtor supports." However, neither the form, nor Bankruptcy Rule 1007, nor § 521 of the Code (which gives rise to the requirement that this information be disclosed) define the term "dependent." Furthermore, "dependent" is not defined in the general definitional section of the Code. *See* 11 U.S.C. § 101.

Congress has formulated various definitions of the term "dependent" throughout numerous areas of federal legislation in accordance with whatever policy it had in mind when it enacted the items of legislation. *See, e.g.,* 10 U.S.C. § 2181(2) (defining "dependent" for purposes of educational assistance for members of the armed forces held as captives); 10 U.S.C. § 1032(d)(1) (disability and death compensation for dependents of members of the armed forces held as captives); 37 U.S.C. § 551 (defining "dependent" for purposes of payments to a missing member of a uniformed service); 30 U.S.C. § 902(a) (Black Lung Benefits Act); 5 U.S.C. § 8110(a) (compensation for dependents of government offi-

cers and employees); 5 U.S.C. § 8441(3) (defining "dependent" for purposes of survivor annuities of government officers and employees); 5 U.S.C. § 8901(9) (defining "dependent" for purposes of health insurance for government officers and employees); 42 U.S.C. § 3796b(2) (defining "dependent" for purposes of public safety officers' death benefits); 26 U.S.C. § 152 (the Internal Revenue Code, defining "dependent" for purposes of meeting one of the requirements in order to claim a deduction against gross income).

Thus, it is clear that Congress has specifically defined the term when the term was to be used in a particular manner for a particular purpose or in a manner other than its plain and usual meaning. As mentioned, though, Congress has not chosen to specifically define "dependent" in the Bankruptcy Code. "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). *See also United States v. Locke,* 471 U.S. 84, 95–96, 105 S.Ct. 1785, 1792–1794, 85 L.Ed.2d 64 (1985) (When interpreting statutory language, absent convincing evidence that Congress intended something different, the Court should give the words their ordinary meaning.).

■. Guided by this remarkably common sense approach, this Court interprets the reference to "dependents" in Official Form 6A to mean a person who reasonably relies on the debtor for support and whom the debtor has reason to and does support financially. Furthermore, given the cited underlying purpose of requiring the preparation and filing of the schedule of current income and expenses (so that the Court and the U.S. Trustee will have some document to analyze for purposes of making a § 707(b) determination), it makes sense that the term "dependent" be broadly construed, because a debtor who is reasonably supporting persons living in his household (even though not legally required to do so)

simply will not have that money available to pay consumer debt.[3]

The first ground for denial of discharge must fail because plaintiff has not proven that the listing of the nine dependents is false, much less a knowing and fraudulent untruth. As noted above, the plaintiff has not disputed that the listed dependents reside with the debtor, that they rely on the debtor for the basic necessities of life, or that the debtor utilized his income to provide support. The plaintiff relies solely on the definition of "dependent" in the Internal Revenue Code, interprets this definition to limit the debtor's claims of dependents for tax purposes to himself only, and argues that since the debtor is limited to himself as a dependent for tax purposes he is limited to himself as a dependent for bankruptcy purposes.[4] The Court finds nothing in the Bankruptcy Code that suggests that the criteria that must be met before a "dependent" can be claimed as a deduction against gross income are to be applied in determining whether a person is a "dependent" for bankruptcy purposes. Therefore, in light of this Court's use of a broad definition of the term "dependent," and the fact that the only allegation regarding the false claim of dependents is the debtor's failure to heed plaintiff's conclusion that a person cannot be an Official Form 6A dependent unless he or she qualifies as a dependent for deduction-from-income purposes, the Court finds that the oath regarding the nine dependents was not false.[5]

### Understatement of Income

The second ground alleged as a basis for denying Mr. Dunbar's discharge is the statement that his take-home pay was $650.00 per month, as of the date the vol-

3. This is not to say that there can never be a claim of dependents based on the fact of support without the usual legal or bloodline ties which would rise to the level of a false oath. This Court's definition of the term "dependent" requires that the debtor have reason to provide support and that the claimed dependent have reason to rely on the debtor. A case by case analysis is necessary in order to determine, for example, the length of time the claimed dependents have resided in the household (here, a number of years), the reason the claimed dependents are residing in the household (here, because they were either children or grandchildren of the woman with whom Mr. Dunbar had been living—as husband and wife—for a number of years), and whether the claimed dependents were in fact necessitous (here there has been no dispute as to the fact of support by the debtor, and the Court concludes, that in this case, offering support to the minor children (either babies or high school students) and to the major children (two of whom were barely making minimum wage, if that, and one who is unemployed) is reasonable).

4. The definition of "dependent" found in the Internal Revenue Code states in pertinent part:
   (a) For purposes of this subtitle, the term "dependent" means any of the following individuals over half of whose support, for the calendar year in which the taxable year of the taxpayer begins, was received from the taxpayer (or is treated under subsection (c) or (e) as received from the taxpayer): ...
   (9) An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 7703, of the taxpayer) who, for the taxable year of the taxpayer, has as his principal place of abode the home of the taxpayer and is a member of the taxpayer's household.
   26 U.S.C. § 152(a)(9). As is apparent from the general definition of "dependent" in § 152, the Internal Revenue Code also adopts a broad definition of the term. However, in order to be eligible to deduct the dependency exemption in computing taxable income, the "dependent" must meet certain other tests. For example, the "dependent" must be a child of the taxpayer who has not made the age of 19 (or who is a student), or the "dependent's" gross income for the year must be less than the exemption amount. *See* 26 U.S.C. § 151(c)(1).
   Plaintiff has introduced the 1987 tax returns of Alvin and Shalot Roberson (showing net, after tax, income of $1,202.47 and $3,164.30) as additional evidence that these persons were not claimable as dependents for income tax purposes. The Court will not opine as to the effect of the Internal Revenue Code as regards the debtor's right to claim Ms. Roberson's children and grandchildren as dependents on his federal income tax return.

5. In absence of any facts whatsoever which would tend to establish fraudulent intent regarding the claim of dependents, this Court is precluded from finding that Mr. Dunbar should be denied discharge even if it is possible that the Court's definition of "dependent" might be found to be incorrect, since in the absence of specific statutory guidance, Mr. Dunbar and this Court are in agreement as to who his dependents are for bankruptcy purposes.

untary petition and schedule of current income and expenses was prepared (October 9, 1987). The plaintiff has submitted the debtor's 1986 Federal Income Tax Return, which shows annual net income after taxes of $14,746, and the 1987 payroll records of the debtor, which show net take-home pay of $9,623 from his employment at Cribbs, Inc. Mr. Dunbar testified at his § 341(a) meeting of creditors that he was at that time receiving $480.00 per week in gross wages. Plaintiff's Exhibit 8 shows that during the months of September through December, 1987, Mr. Dunbar averaged $287.51 per week and $1,249.24 per month in after tax wages exclusive of a Christmas bonus, but that during the week of October 1–8, 1987, his take-home pay was $181.83. Exhibit 8 shows an average of 4.5 pay weeks per month and therefore, as of the date the schedule was prepared (October 9, 1987), it would have been reasonable to project a monthly take-home pay of $818.25. The 1987 payroll records recap, submitted by the plaintiff as part of Exhibit 8, show net wages for the year after taxes (and miscellaneous "other" deductions totalling $2,417.27 for union dues, garnishments, *etc.*), to have been $9,623.55, which translates into take-home pay of $801.96 per month for the entirety of 1987. The discrepancy, therefore, from the evidence submitted, appears to have been $168.25 per month based upon the week preceding the preparation of the schedule or approximately $200.00 per month on a 12–month average (the last four months of the year were somewhat better for Mr. Dunbar). Plaintiff relies upon the § 341(a) meeting testimony (that as of *that date* Mr. Dunbar admitted that he was making about $480.00 per week in gross wages) as establishing the broad discrepancy from which to impute fraudulent intent. As mentioned, however, the size of the false oath is not what the materiality requirement is about; but even if it were, plaintiff has failed to consider that the schedule is of *current* income (as of the date of the schedule). Even assuming for discussion that the $168.25–$200.00 per month discrepancy could constitute a false oath relating to a material matter, analysis of the evidence as to intent to defraud or make a false oath establishes that, for purposes of this decision, there has been no fraudulent intent on the part of Mr. Dunbar.

The transcript of the § 341(a) meeting makes it clear that Mr. Dunbar's lawyer was somewhat confused when preparing the schedules for Mr. Dunbar and Ms. Roberson. As mentioned, the two debtors were and had been living together as husband and wife for years (a situation which, in Louisiana, does not evolve into a relationship upon which the law confers the status of marriage). Because they were not married, their attorney filed two individual cases on their behalf. (*See* 11 U.S.C. § 302). When asked by the estate administrator during the § 341(a) meeting to explain the expenses listed on the schedule, Mr. Dunbar's attorney, at one point, indicated that the expenses listed on each debtor's schedule represented the total expenses of the household, but later corrected himself and stated that he listed one-half of the total household expenses on each schedule. The discussion at the § 341(a) meeting about the schedule and the true income picture, however, is virtually incomprehensible. At one point Mr. Dunbar's attorney states that he believes he split the income of Mr. Dunbar, puting half in his schedule and half in Ms. Roberson's schedule, but, finally, he does not appear to be sure of just what he did. Furthermore, there is no indication that Mr. Dunbar intended to conceal his true income. Although he testified (in response to a question by his own attorney) that his take-home pay *according to the schedule* was $650 per month, he testified in response to questioning by the plaintiff's counsel that his gross wages at the time of the meeting were $480 per week. There was no questioning at the § 341(a) meeting by counsel for plaintiff herein as to what the take-home wages actually were as of the date of preparation of the schedule or as to why the schedule of income differed from the wages apparently earned as of the § 341(a) meeting date. Based upon the § 341(a) testimony as transcribed, the Court is convinced that neither Mr. Dunbar nor his attorney knew why the income figure listed in the schedule was $650.00.

There is no indication that Mr. Dunbar knew what his attorney had done, and

there is no concrete indication that his attorney had any idea what he had done. The Court further notes that Mr. Dunbar was not subpoenaed by the plaintiff, and, therefore, the only items of evidence as to intent are the payroll records, the tax returns and the § 341(a) meeting transcript. Based upon the evidence before it (which, to reiterate, does not include even *one* question put to Mr. Dunbar about why the schedule says what it says), this Court finds that the debtor's schedule of net income, while apparently inaccurate, was the result of carelessness or ignorance on the part of Mr. Dunbar (or on the part of his attorney) and was not a fraudulent act. *See In re Fischer,* 4 B.R. 517, 518 (Bankr.S. D.Fla.1980).[6] This case is not one in which the debtor maintained a "reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by Section 727(a)(4)(A)." *Gonday,* 27 B.R. at 433. Mr. Dunbar's forthright, though somewhat befuddled, testimony at the § 341(a) meeting further belies any indication of fraudulent intent. *See Humphries v. Nally,* 269 F. 607, 608–609 (5th Cir.1920) (where the court found no evidence of fraudulent intent when the bankrupt made a full and true disclosure through testimony at the meeting of creditors.)

### *Request for Attorney's Fees*

In his answer to the complaint, the defendant requests attorney's fees and costs in accordance with 11 U.S.C. § 523(d) which provides:

> (d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d). An award of attorney's fees pursuant to this section is limited to a determination of dischargeability of a consumer debt under § 523(a)(2). This action was brought under § 727(a)(4)(A). Because § 523(d) does not provide a statutory basis for an award of attorney's fees and costs for actions under § 727, the Court denies the debtor's request for fees and costs.

A separate order will be entered this date.

### ORDER

For written reasons separately entered this date,

IT IS ORDERED that the relief requested in plaintiff's complaint to deny the debtor's discharge on the grounds that debtor knowingly and fraudulently made false statements be and hereby is DENIED, and that plaintiff's complaint be and hereby is DISMISSED with prejudice, at plaintiff's cost.

IT IS FURTHER ORDERED that defendant's request for attorney's fees and costs pursuant to 11 U.S.C. § 523(d), and otherwise, be and hereby is DENIED.

---

**6.** Counsel for the debtor is admonished to pay particular attention in the future to the requirement of collecting accurate information in preparation of the required bankruptcy pleadings, schedules and statements.