In re Jason Wynn MELER, Debtor.

Jason Wynn Meler, Appellant,

v.

United States Trustee, Appellee.

Civ. No. 02–508–TUC–JMR.
Bankruptcy No. 02–2944.

United States District Court,
D. Arizona.

May 5, 2003.

Jeffrey Alan Sandell, Gilbert, AZ, for appellant.

Elizabeth C. Amorosi, U.S. Trustee's Office, Phoenix, AZ, for appellee.

## ORDER

ROLL, District Judge.

Debtor Jason Meler appeals from the bankruptcy court's dismissal of his Chapter 7 bankruptcy petition. For the reasons set forth below, the bankruptcy court's decision is affirmed.

## BACKGROUND

On June 7, 2002, Meler filed a voluntary Chapter 7 bankruptcy petition.[1]

---

1. Chapter 7 is designed for debtors who do not have the ability to pay their existing debts. A Chapter 7 bankruptcy results in a total discharge of existing debts, except those debts not dischargeable such as certain taxes, alimony and criminal restitution.

His yearly gross income is $63,700. He has $28,821 in secured debt.[2] On Schedule I of his petition, titled "Current Income of Individual Debtor(s)", Meler listed six dependents:

    (1) Ryan Meler, 2, biological son;

    (2) Kerry Tibbits, 30, girlfriend;

    (3) Desmond Bleck, 10, girlfriend's child;

    (4) Dilan Bleck, 8, girlfriend's son;

    (5) Courtni Bleck, 7, girlfriend's daughter;[3] and

    (6) Devin Bleck, 5, girlfriend's son.

██ On or about August 28, 2002, the United States Trustee filed a motion to dismiss Meler's bankruptcy case pursuant to 11 U.S.C. § 707(b). The Trustee alleged that the granting of a total discharge of Meler's debts under Chapter 7 would result in a substantial abuse of Chapter 7 because Meler could fund a Chapter 13 plan.[4] Specifically, the Trustee contended that Meler improperly included in his expenses those incurred to support his live-in girlfriend and her four children.[5] The Trustee argued that without these expenses, Meler has a monthly disposable income of $1,058.74, which is more than sufficient to fund a three-year Chapter 13 plan. On September 30, 2002, the bankruptcy court held a hearing on the Trustee's motion to dismiss. Both attorneys appeared telephonically. On October 4, 2002, the bankruptcy court granted the Trustee's motion to dismiss, ruling that Meler had "engaged in a substantial abuse of the bankruptcy system, and that the non-inclusion of [the five un-related parties] as part of his living expenses would enable him to provide a Chapter 13 dividend to his creditors." Meler appealed and elected to proceed before the District Court.

On January 31, 2003, Meler filed his opening brief. The Trustee file her responsive brief on February 18, 2003. Meler filed his reply on March 4, 2003. A hearing was held in this matter on Friday, April 11, 2003.[6]

## STANDARD OF REVIEW

██ A district court reviews a bankruptcy court's findings of fact under the clearly erroneous standard and reviews its conclusions of law *de novo*. *In re Compton Impressions, Ltd.*, 217 F.3d 1256, 1260 (9th Cir.2000).

---

**2.** Of this amount, Meler owes $7,000 in priority taxes to the Internal Revenue Service and Arizona Department of Revenue. The remainder of his debt consists primarily of credit card debt.

**3.** On Schedule I of Meler's petition, he referred to Courtni as his girlfriend's son. During the bankruptcy proceedings, the bankruptcy judge stated that the Debtor may have inadvertently referred to Courtni as his girlfriend's "son" rather than as her "daughter." It was unclear from the bankruptcy record, however, whether Courtni is a male or female. At the hearing on appeal, Meler's attorney clarified that Courtni was in fact the girlfriend's daughter.

**4.** Chapter 13 is designed for individuals with regular income who are temporarily unable to pay their debts but would like to pay them in installments over a period of time, usually three years.

**5.** The Trustee does not challenge Meler's inclusion of the expenses he incurs to support his biological son, Ryan.

**6.** The hearing was originally scheduled for Monday, April 7, 2003. It was re-scheduled due to Meler's counsel's failure to appear at the hearing. According to counsel, he had not received the Court's order setting the hearing. Upon further review of the matter, the Court learned that Meler's attorney had not provided the Court with an official notice of change of address as required by the Local Rules of this Court.

## MELER'S APPEAL

Meler raises three arguments for reversal of the bankruptcy court's decision: 1) his girlfriend and her four children are his "dependents" under the Bankruptcy Code; 2) even assuming that these individuals are not his dependents, he still does not have sufficient disposable income to fund a Chapter 13 plan; and 3) the bankruptcy court failed to conduct an evidentiary hearing.

### A. Are Meler's girlfriend and her four children his "dependents" under the Bankruptcy Code?

"Prior to 1984, debtors enjoyed a virtually unfettered right to a 'fresh start' under Chapter 7, in exchange for liquidating their nonexempt assets for the benefit of their creditors." *Green v. Staples (In re Green)*, 934 F.2d 568, 570 (4th Cir.1991). In 1984, "in response to pressure from retailers and consumer lenders who complained of an increasing number of Chapter 7 bankruptcies being filed by non-needy debtors," Congress added § 707(b) to the Bankruptcy Code. *Id.* Section 707(b) states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a *substantial abuse* of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions ....

(emphasis added).

■ "Section 707(b) reflects the tension between the fundamental policy concern of the Bankruptcy Code, granting the debtor an opportunity for a fresh start, and the interest of creditors in stemming abuse of consumer credit." *In re Green*, 934 F.2d at 571.

The parties do not dispute that Meler's debts are primarily consumer debts. The issue is whether "substantial abuse" would result if Meler is allowed Chapter 7 discharge.

### 1. Substantial abuse

The Bankruptcy Code does not define "substantial abuse." There have been several different tests developed by the circuit courts.[7] The only Ninth Circuit Case ad-

---

**7.** All of the circuit courts agree that ability to pay is a factor to be considered in determining whether substantial abuse has occurred. However, they differ as to whether ability to pay, standing alone, constitutes substantial abuse. *See, e.g., Stewart v. United States Trustee (In re Stewart)*, 175 F.3d 796, 809 (10th Cir.1999)(totality of circumstances test; "[w]hile ... ability to pay is a primary factor in determining whether 'substantial abuse' occurred, we believe other relevant or contributing factors, such as unique hardships, must be examined before dismissing a Chapter 7 petition"); *Kornfield v. Schwartz (In re Kornfield)*, 164 F.3d 778, 784 (2nd Cir.1999) (totality of circumstances test); *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1, 5 (1st Cir.1998) (adopting totality of circumstances test; "in assessing the totality of a debtor's circumstances, courts should regard the debtor's ability to repay out of future disposable income as the primary, but not necessarily conclusive, factor of 'substantial abuse'"); *United States Trustee v. Harris*, 960 F.2d 74, 77 (8th Cir.1992) (ability to fund Chapter 13 plan alone is sufficient reason to dismiss a Chapter 7 petition; rejecting totality of circumstances test); *Green v. Staples (In re Green)*, 934 F.2d 568, 572–73 (4th Cir.1991) (totality of circumstances test); *In re Krohn*, 886 F.2d 123, 126–27 (6th Cir.1989) (a court should ascertain from the totality of the circumstances whether

dressing the issue is *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir.1988).

■ In *In re Kelly*, the Ninth Circuit stated that the primary factor to be considered in determining whether granting relief under Chapter 7 would amount to a "substantial abuse" is "the debtor's ability to pay his debts when due, as determined by his ability to fund a[C]hapter 13 plan . . . ." *In re Kelly*, 841 F.2d at 914. Although this statement seems to imply that other factors may be relevant, the Ninth Circuit stated that "a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse." Therefore, the ability to pay, on its own, may support a finding of substantial abuse in the Ninth Circuit and it was, in fact, the basis for the bankruptcy court's dismissal of this case. Therefore, the Court's review on appeal is limited to whether Meler has the ability to fund a hypothetical Chapter 13 plan.[8]

### 2. Chapter 13—Definition of "Dependent"

Under Chapter 13, if a trustee or the holder of an allowed unsecured claim objects to the confirmation of a Chapter 13 plan, the bankruptcy court may not approve the plan unless, as of the effective date of the plan, "the plan provides that all of the debtor's protected disposable income to be received in the three-year period . . . will be applied to make payments under the plan." 11 U.S.C. § 1325(b)(1)(B). Under this section, "disposable income" means "income which is received by the debtor and which is not

reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ." § 1325(b)(2)(A).

The term "dependent" is not defined in the Bankruptcy Code. Meler argues that because Congress did not define dependent, the rules of statutory construction apply and "dependent" should be given its common, ordinary meaning. He contends that the common, ordinary meaning of "dependent" is "one who relies on another for support." He states that under this definition, his girlfriend and her four children are his dependents. He also alleges that if Congress had intended to require legal dependency, it would have stated so.

The Trustee alleges that a "dependent" must have some sort of legal relationship with the debtor. She states that all but two of the eight cases Meler cites in support of his dependency argument are actually consistent with the bankruptcy court's decision in this case because they involve the expenses of individuals who are related to the debtor. She also cites to seven cases which she alleges support her argument that there must be a legal relationship between the debtor and the alleged dependent.

The Trustee also argues that if Meler's definition of "dependent" were used for purposes of § 707(b) dismissals, absurd results would follow. For instance, the Trustee contends that if Meler's expenses for his girlfriend and her four children were allowed to be considered in figuring his disposable income, then the expenses incurred by a debtor for the support of one

---

a debtor is merely seeking an advantage over his creditors or whether he is needy; among the factors to be considered is whether debtor has ability to repay his debts out of future earnings, this alone may be sufficient to warrant dismissal).

**8.** Of course, just because the Court must look to Chapter 13 in determining whether Meler has the ability to pay, the Court does not disregard the fact that this case involves a Chapter 7 petition and the dismissal of this petition under § 707(b), a provision of Chapter 7.

or more homeless families over a long period of time would be allowable. More importantly, the Trustee contends that if Meler, after receiving discharge of his debts, decided to terminate support of his girlfriend and her four children, he can do so without consequence as he has no legal obligation to them.

*Discussion*

No circuit court has addressed whether the term "dependent" requires a legal or familial relationship. There are numerous bankruptcy court cases which offer conflicting results. Some courts have determined that a debtor's expenses to support his or her adult children, parents or grandchildren are reasonably considered in calculating the debtor's disposable income. *See, e.g., In re Smith,* 269 B.R. 686, 689–90 (Bankr.W.D.Mo.2001) (expenses of 20–year–old daughter living at home and attending college); *Howell v. The Education Resources Inst. (In re Howell),* 1996 WL 1062559, *4 (Bankr.N.D.Ala. Jan.5, 1996) (mother); *In re Gonzales,* 157 B.R. 604, 609–11 (Bankr.E.D.Mich.1993) (19– and 21–year–old children attending college); *In re Tefertiller,* 104 B.R. 513, 515 n. 1 (Bankr.N.D.Ga.1989) (21–year–old daughter); *In re Wegner,* 91 B.R. 854, 859 (Bankr.D.Minn.1988) (adult children and grandchildren); *In re Tracey,* 66 B.R. 63, 67 (Bankr.D.Md.1986) (mother).

Other courts have declined to find individuals, although arguably dependent upon the debtor, to be "dependents" under the Bankruptcy Code, even in the face of a legal or familial relationship. *See, e.g., In re Beharry,* 264 B.R. 398, 404 (Bankr. W.D.Pa.2001) (second wife's minor child); *In re Cox,* 249 B.R. 29, 32 (Bankr.N.D.Fla. 2000) (mother, fiancé and fiancé's children); *In re Haddad,* 246 B.R. 27, 37 (Bankr.S.D.N.Y.2000) (mother); *In re Duncan,* 201 B.R. 889, 893, 897 (Bankr. W.D.Pa.1996) (six members of household);

*In re Mastromarino,* 197 B.R. 171, 178–79 (Bankr.D.Me.1996) (domestic partner and her four children); *In re Richmond,* 144 B.R. 539, 542 (Bankr.W.D.Okla.1992) (grandchildren); *In re McKean,* 81 B.R. 9, 11 (Bankr.W.D.Tex.1987) (co-tenant and co-tenant's daughter).

It is these latter cases which are factually most similar to the circumstances of this case. As one court stated in denying expenses incurred for the support of the debtor's domestic partner and her four children: "To grant such voluntary expenditures priority over existing legal obligations [to creditors] would be to permit [the debtor] unilaterally to subordinate his creditors to his personal lifestyle choices." *In re Mastromarino,* 197 B.R. at 178.

In any event, only *Leslie Womack Real Estate, Inc. v. Dunbar (In re Dunbar),* 99 B.R. 320, 324–25 (Bankr.M.D.La.1989), a Middle District of Louisiana case, superficially supports Meler's argument regarding the definition of dependents. There, one of the debtor's creditors objected to a discharge pursuant to 11 U.S.C. § 727(a)(4)(A), alleging that the debtor knowingly and fraudulently made a false statement concerning the listing of nine dependents who were his live-in girlfriend's children and grandchildren. 99 B.R. at 321. The bankruptcy court ruled that the debtor's listing of the nine individuals as dependents was not a "knowing and fraudulent untruth." *Id.* at 324–25. Accordingly, *In re Dunbar* did not involve a dismissal under § 707(b). In addition, it applied the common, ordinary meaning of "dependent" without regard to the results of such a definition.

■ Here, Meler's girlfriend and her four children are not related to Meler. He has absolutely no legal obligation, or even

moral responsibility, to them.[9] During oral argument, Meler's attorney indicated that the biological father of the girlfriend's four children, who is legally responsible for their support, provides none. Although there is no evidence that Meler listed these individuals in order to enrich himself or deprive his creditors, the issue is not whether Meler acted in good faith but rather, whether he has the ability to pay his debts. It is unnecessary for this Court to attempt to define in a bright-line fashion who qualifies as a dependent and who does not. For purposes of this action, the only requisite ruling is whether Meler's girlfriend and her four children qualify as dependents for Chapter 7 bankruptcy purposes. The Court agrees with the bankruptcy court; they do not.

Accordingly, the bankruptcy court correctly determined that Meler's live-in girlfriend and her four children are not his dependents under § 1325.[10]

*B. Assuming that Meler's girlfriend and her four children are not Meler's "dependents" under the Bankruptcy Code, does Meler have sufficient disposable income to fund a hypothetical Chapter 13 plan?*

Meler contends that even assuming that the support he provides his girlfriend and her four children cannot be included in calculating his disposable income, he still does not have sufficient disposable income to fund a hypothetical Chapter 13 plan. He concedes that his net monthly income is $4,256.74. However, he contends that this amount includes his girlfriend's income of $430.00. He alleges that if he cannot deduct his girlfriend's expenses, her income should not be included in his monthly income. Therefore, he argues his monthly income should be reduced by $430.00 to $3,826.74.

As to his monthly expenses, he contends that the amount suggested by the Trustee, $3,198.00, which excludes the expenses of his girlfriend and her four children, does not include an additional $50 to $100 per week expense for child care.[11] He states that child care would cost between $216.50 ($50.00 × 4.33) and $433.00 ($100.00 × 4.33) per month, which would increase his monthly expenses to between $3,414.50 ($216.50 + $3,198.00) and $3,631.00 ($433.00 + $3,198.00). He argues that when his total monthly expenses are subtracted from his total monthly income, his monthly disposable income ranges from $195.74 ($3,826.74–$3,631.00) to $412.74 ($3,826.74–$3,414.00).[12] Meler contends that if the midpoint of these two amounts, $304.24, is used to calculate his disposable

---

**9.** Although one may argue that Meler should support the mother of his child, there is no law obligating him to do so.

**10.** At oral argument, Meler contended that the Trustee was attempting to "have it both ways." He stated that if he were to file a Chapter 13 action, the Trustee would include the household income, including his girlfriend's income, and the household expenses, including those of his dependents. This is not the issue before this Court. The sole issue here is whether allowing Meler a discharge under Chapter 7 would constitute a substantial abuse of Chapter 7.

**11.** Meler states that if he is required to make monthly payments to his creditors and is no longer able to provide support to his girlfriend and her children, then his girlfriend would have to seek full-time employment. Because his girlfriend currently provides in-home care to his biological child, if she were to begin full-time employment, he contends he would have to start paying for outside daycare for his son.

**12.** In his opening brief, Meler miscalculates the higher range of his net disposable income as $412.24 rather than $412.74. The Court utilizes the correct amount in describing his arguments, which results in slightly different calculations than those outlined in his brief.

income over a three-year period, the result is $10,952.64 ($304.24 × 36).

Meler further argues that if his attorney's fees ($2,700) and the Trustee's fees ($1,095.26) are subtracted from $10,952.62, only $7,157.38 would be available for distribution to his creditors. Of this amount, Meler alleges $7,000.00 would be paid to the Arizona Department of Revenue and Internal Revenue Service for unpaid priority taxes, leaving $157.38 to be distributed to his unsecured creditors. He contends that because he owes his creditors $21,821.00, they would recoup less than 1% of what he owes them. He argues that this payout does not constitute an ability to pay his debts and accordingly, the bankruptcy court erred in dismissing this case based on substantial abuse.

In response, the Trustee acknowledges that she mistakenly included Meler's girlfriend's income in calculating Meler's monthly income. Accordingly, she agrees with Meler that his monthly income is $3,826.74. The Trustee, however, does not agree with Meler's expense calculations. The Trustee contends that the amount she listed in her motion to dismiss, $3,198.00, included a $150.00 per month daycare expense, which is 60% of the $250.00 expense Meler currently pays for five children.[13] She alleges that this is a fair figure because it does not include a contribution from his girlfriend who, as the mother of Meler's biological son, must bear some of the expense of his daycare, whether it be monetary or "in-kind."

The Trustee contends that if $3,198.00 is deducted from Meler's monthly income, Meler's monthly disposable income is $628.54 or $22,627.44 over three years. After reducing this amount by the debtor's

attorney's fees and the Trustee's fees, the Trustee alleges that $18,708.86 is available to unsecured creditors which is 64.9% of Meler's total debt, including the $7,000 in priority taxes. The Trustee argues that this amount and percentage constitutes the ability to pay one's debts and accordingly, the bankruptcy court properly dismissed Meler's Chapter 7 petition for substantial abuse.

*Discussion*

The bankruptcy court, in dismissing Meler's Chapter 7 petition, determined that "the non-inclusion of [the five unrelated] parties as part of [Meler's] living expenses would enable him to provide a [C]hapter 13 dividend to his creditors." The court did not explain the basis for this conclusion. Therefore, it is assumed that it agreed with the calculations of the Trustee.

It is now apparent that the calculations of the Trustee presented to the bankruptcy court were incorrect. Specifically, her calculations of Meler's monthly income improperly included the monthly income of his girlfriend. Therefore, the Trustee's initial averment to the bankruptcy court that Meler could fund 132% of his unsecured obligations over a three-year period is no longer accurate.

Meler's calculations are also incorrect. As stated previously, Meler alleges that his monthly disposable income is $304.24. This figure was calculated based on the assumption that the Trustee had not included any daycare expense in figuring Meler's monthly expenses. However, the Trustee's monthly expense calculations in-

13. In her motion to dismiss in the bankruptcy court, the Trustee claimed that the $250.00 covered the day care expenses for four children. In her brief on appeal, the Trustee claims it covered five children. This discrepancy is not relevant to the Court's determination.

cluded $150.00 for daycare.[14] Therefore, Meler's calculation of his monthly disposable income is understated by $150.00.

Notwithstanding the above, the bankruptcy court correctly concluded that Meler has the ability to fund a hypothetical Chapter 13 plan.

Assuming that Meler's monthly disposable income calculation, $304.24, is increased by $150.00, the result is $454.24 in monthly disposable income. Over three years, $16,352.64 would be realized for payment to creditors. After subtracting $1,422.68 ($16,352.64 X .087) for the Trustee's fees and $1,950.00 for Meler's attorney's fees,[15] $12,979.96 would be available to be paid to creditors. In other words, Meler has the ability to repay 45% of his total debt.

The Ninth Circuit has not established a threshold percentage or formula for determining what constitutes the ability to pay one's debts. In *In re Kelly*, 841 F.2d at 915, the Ninth Circuit affirmed the bankruptcy court's dismissal for substantial abuse based on the debtors' ability to repay 99% of their unsecured debt in three years. In *Gomes v. United States Trustee (In re Gomes)*, 220 B.R. 84, 88 (9th Cir. BAP 1998), the Ninth Circuit Bankruptcy Appellate Panel determined that the debtors' ability to repay 43% of their debt within 3 years was sufficient to preclude the debtors' Chapter 7 petition. In *Harris v. United States Trustee (In re Harris)*,

279 B.R. 254, 262 (9th Cir. BAP 2002), the Bankruptcy Appellate Panel found that a payout of three and one-half cents on the dollar to creditors or 3.5% did not constitute an ability to pay one's debts. Other courts have found an ability to pay based on various percentages. *See, e.g., Fonder v. United States*, 974 F.2d 996, 1000 (8th Cir.1992) (89% over three years and over 100% in five years); *In re Walton*, 866 F.2d 981, 985 (8th Cir.1989) (two-thirds of debt over three years and over 100% in five years); *Nelson v. Siouxland Federal Credit Union (In re Nelson)*, 223 B.R. 349, 353 (8th Cir. BAP 1998)(79.9% of debt over three years); *In re Beckel*, 268 B.R. 179, 185 (Bankr.N.D.Iowa 2001) (30–80% of debt over three years); *In re Woodward*, 265 B.R. 179, 195 (Bankr.S.D.Iowa 2001) (37.2% in three years, 62% in five years); *In re Praleikas*, 248 B.R. 140, 145 (Bankr. W.D.Mo.2000) (20% of debt over three years); *In re Coleman*, 231 B.R. 760, 763 (Bankr.D.Neb.1999) (25–35% over three years; 42–58% over 5 years); *In re Smith*, 1995 WL 20345 *2–3 (Bankr.D.Idaho Jan.11, 1995) (54% of debt over three years and over 90% in five years).

■ In determining the ability to pay one's debts, courts tend to focus on the percentage of debt that could be repaid. However, the mere percentage of debt is not necessarily determinative. The question always remains whether the debtor has the ability to repay his or her debts. As one court stated:

---

**14.** The Trustee's calculation of $150.00 for daycare may not be accurate either. The Trustee contends that $150.00 is more than adequate because it cost $250.00 for Meler to provide daycare for five children. However, the $250.00 figure was calculated when Meler's girlfriend was providing in-home care to the children.

**15.** The parties dispute the amount of these fees. Meler contends that his attorney's fees are $2,700. The Trustee contends that

$750.00 of this amount has already been paid, leaving $1,950 unpaid. As to the Trustee's fees, Meler contends the fees are approximately 10% of the total income realized. The Trustee contends that the Trustee's fees in Tucson are 8.7% of disbursements. Because Meler did not dispute the Trustee's contentions in his reply brief, the Court is proceeding with the Trustee's figure for attorney's fees, $1,968.58, and applying 8.7% to determine the Trustee's fees.

Although a number of courts have taken into consideration the percentage of a debtor's debt that could be paid from future earnings, there is no bright line test. While it may be true that the higher the percentage of debt a Debtor could pay with future earnings, the more likely it is that a court would find substantial abuse, the converse is not true. Otherwise debtors would be rewarded for having more debt, rather than less. Instead of the percentage of debt, the determination of a debtor's ability to fund a Chapter 13 plan is based on a consideration of the debtor's ability to make a substantial effort in repaying his or her debts.

*In re Praleikas,* 248 B.R. at 145.

Here, Meler could make substantial monthly payments of $454.24 to his creditors. He has the ability to repay 45% of his debt. This is a return of 45 cents on the dollar. Therefore, Meler has the ability to pay his debts and allowing him a discharge of those debts would constitute a substantial abuse of Chapter 7.[16]

### C. Did the bankruptcy court err in not holding an evidentiary hearing?

Meler contends that the bankruptcy court erred in not conducting an evidentiary hearing regarding the nature of his relationship with his girlfriend and her four children. However, he also states that he only requests the opportunity for an evidentiary hearing in the event the Court determines that the definition of "dependent" does not require legal dependency and that there is insufficient evidence on the record to establish that Meler's girlfriend and her four children meet this definition.

Because Meler's girlfriend and her four children are not his dependents under the Bankruptcy Code as a matter of law, no evidentiary hearing is necessary regarding the nature of Meler's relationship with his girlfriend and her four children.

Accordingly,

**IT IS ORDERED** that the bankruptcy court's decision dated October 4, 2002 is **AFFIRMED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE.**

---

16. Meler argues that the percentage of debt he could repay should be calculated after his priority taxes are subtracted. Under this theory, $5,979.96 would remain to pay his non-tax creditors, to which he owes $21,821.00. This constitutes a 27% payout to his creditors.

Meler does not cite to any authority to support his argument. The only case the Court has discovered applying this procedure is *In re Harris,* 279 B.R. at 262. In *In re Harris,* the Ninth Circuit Bankruptcy Appellate Panel subtracted the debtors' priority tax obligations prior to determining the percentage of debt the debtors could repay. *Id.* This procedure resulted in a finding that the debtors could repay only 2.5% of their debt. *Id.* Based on this percentage, the court concluded that the debtors did not have the ability to repay their debts. *Id.*

*In re Harris* is distinguishable. Assuming this procedure does apply, Meler's 27% payout is significantly more than the 2.5% payout in *Harris.* Also, had this procedure not been applied in *Harris,* only an 11% percent payout to creditors would have resulted. Again, this is significantly less than the 45% available in this case.