**In re Edwin H. EVANS, Debtor.**

**No. 03–31438PM.**

United States Bankruptcy Court,
D. Maryland,
Southern Division.

Dec. 23, 2004.

James Greenan, Christopher Hamlin, Esq., Greenbelt, MD, for debtor.

Roger Schlossberg, Hagerstown, MD, trustee.

## MEMORANDUM OF DECISION

PAUL MANNES, Bankruptcy Judge.

This case is before the court on the United States Trustee's motion to dismiss the case pursuant to 11 U.S.C. § 707(b) and the Debtor's opposition. The court held a hearing on the motion, September 28, 2004, and after receipt of testimony and exhibits, requested that the parties file

proposed findings of fact and conclusions of law.

This case is governed by § 707(b) that provides:

**11 U.S.C. § 707. Dismissal**

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

■ The rule of decision for motions filed pursuant to 707(b) is found in the opinion in *Green v. Staples (In re Green)*, 934 F.2d 568, 572 (C.A.4 1991). This opinion instructs bankruptcy courts that in deciding motions filed pursuant to 707(b) to examine the totality of the circumstances in determining whether a case involves a debtor taking unfair advantage of his creditors. The *Green* court instructed that in determining the totality of circumstances, this court must consider five relevant factors that are described in detail later in this opinion.

The Debtor, Edwin H. Evans, scheduled a total of $657,339.74 in debt on his Schedules filed on October 7, 2003. There was one secured claim listed in the amount of $468,000.00. That claim, said to be held by New Century Mortgage Corp., is in the form of a promissory note that is secured by a deed of trust on the family residence. The property is owned by the Debtor and his wife as tenants by the entirety, but the note was signed only by Debtor's wife, Nancy. That obligation appears current, so the equity in their home is exempt from attack by all creditors, except for claims against both the Debtor and his wife and certain claims held by the Internal Revenue Service. *United States v. Craft*, 535 U.S. 274, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002).

■ The first issue for the court to decide is whether Mr. Evans' debts are primarily consumer debts. His scheduled unsecured debts total $189,399.74. There is a $55,468.00 loan made by Merrill Lynch that is secured by a insurance policy. "Consumer debt" is a term defined by 11 U.S.C. § 101(8)—"consumer debt" means debt incurred by an individual primarily for a personal, family, or household purpose. There is nothing in this record to link the Merrill Lynch loan to family purposes. Likewise, the $69,000.00 debt owed to Wells Fargo on account of his guarantee of an obligation of Evans Printing Company does not fall into this category. This business closed down in October 2001. Finally, the Debtor's Exhibit No. 1 appears to be a statement of a $6,234.21 obligation he owed on a credit card account that was used for business purposes. Thus, well over half of the scheduled unsecured debts are not consumer debts. "Primarily" means more than 50%. *In re Stewart*, 175 F.3d 796, 808 (C.A.10 1999). Even if the policy loan were removed from the equation, his unsecured debts are still not primarily consumer debts.

■ But that does not end the inquiry. New Century Mortgage Corporation holds a note scheduled at $468,000.00 that

is secured by a deed of trust on property owned by the Debtor and his wife. While the Debtor did not sign the note, he executed the deed of trust that secures it. Thus under 11 U.S.C. § 102(2), New Century has a claim against the Debtor. Under 11 U.S.C. § 101(12), a debt is defined as "liability on a claim." A home mortgage generally is held to be a consumer debt. *In re Price,* 280 B.R. 499 (9th Cir. BAP 2002) *aff'd* 353 F.3d 1135 (C.A.9 2004), *In re Funk,* 146 B.R. 118 (D.N.J. 1992), *In re Johnson,* 115 B.R. 159 (Bankr. S.D.Ill.1990). Accordingly, the United States Trustee has met one part of his burden of proof.

■ Looking at the totality of the circumstances, the court can well appreciate why the United States Trustee filed this motion. After the failure of Evans Printing Company, the Debtor and his wife refinanced the loan on their residence in Chevy Chase, Maryland. At the settlement on the transaction on August 29, 2002, the Debtor and his wife signed a deed of trust that secured a promissory note signed only by her. More than $50,000.00 of the proceeds were used to pay off her credit card obligations, leaving only his credit card debt. A portion of the proceeds were used to pay off the debt to Columbia Bank, an obligation guaranteed by the Debtor and his brother, James M. Evans, Jr.. The Debtor similarly preferred his brother over all other creditors by paying the balance due him for the purchase of his shares in the already-failed business. He continued to make the ten or so payments still due his brother after the business shut down. All of this appears to have been orchestrated carefully following a visit to his lawyer in 2000 that he made when his credit card debt was getting out of hand. He sought help in financial planning in the face of a failing business.

When he filed this bankruptcy case in October 2003, the Debtor stated, under penalty of perjury, that the value of his residence was $420,580.00. He did this notwithstanding the fact that in conjunction with the 2002 refinancing, he had an appraisal showing the value of the property as $750,000.00. It was only after the United States Trustee filed exhibits containing this appraisal and one other appraisal that, at the very last minute, the Debtor amended his Schedule to provide an accurate valuation of the home. The court finds that the purpose of the undervaluation was to mislead the Chapter 7 Trustee in the event that joint creditors were discovered who could trigger the sale of the home. Apart from submitting a patently false Schedule, the Debtor testified truthfully. It must be noted that what the court has before it is not an objection to the Debtor's discharge, but a motion to dismiss this case as a substantial abuse of the bankruptcy process.

The expenses claimed by the Debtor are unexceptional other than a telephone bill said to be of $360.00 a month and college expenses of $2,500.00 a month to cover his daughter's tuition at Cornell University. This telephone bill is overstated. The court finds as a fact that the Debtor has disposable income that could be devoted to repayment in part of his debt. But under *Green v. Staples, supra* at 572–573, that fact alone does not override the presumption of granting a discharge. To state the issue bluntly, after paying his brother and discharging an obligation guaranteed by his brother, Mr. Evans wants his creditors to help finance the education of his daughter at a distinguished private university and to help him pay off a student loan owing by him for the education of an adult son.

■ Will the motion of the United States Trustee fail because the Debtor, with the assistance of skilled counsel,

planned this crafty exit from insolvency? To begin, pre-bankruptcy planning is not in and of itself fraudulent. Compare *In re Hanson v. First Nat'l Bank in Brookings*, 848 F.2d 866 (C.A.8 1988) with *Norwest Bank Nebraska N.A. v. Tveten*, 848 F.2d 871 (C.A.8 1988) and *Ford v. Poston*, 773 F.2d 52 (C.A.4 1985). Paying for the expenses of higher education of one's children is likewise a laudable effort. Many parents undergo tremendous sacrifices so that their children do not go out into the business world with a crushing debt burden. But the issue remains whether, under the totality of circumstances, this case under chapter 7 should be dismissed as a substantial abuse of the bankruptcy process, thereby propelling the Debtor into a case under Chapter 13. The court will now review this case pursuant to the Fourth Circuit's instructions contained in *Green v. Staples*.

**1. Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment.**— This case cannot be attributed to any of these factors. It was filed after judgments had been recovered against the Debtor by Discover Cards, Ford Motor Credit and Wells Fargo. It is most likely that, with the failure of the Debtor's printing business, bankruptcy was contemplated well in advance of the filing. The court assumes that the Debtor's counsel did not want to expose the Debtor's brother to a preference claim by the Trustee and delayed filing the bankruptcy case so as to protect his brother.

**2. Whether the Debtor incurred cash advances and made consumer purchases far in excess of his ability to repay.**— The Debtor's residence was refinanced more than a year before the filing of this bankruptcy case. The monthly payments on the loan are more than 90% of his take home pay. Somehow the Evans make do on their combined salaries. At the time

that the case was filed, they were current on that loan.

**3. Whether the Debtor's proposed family budget is excessive or unreasonable.**—Here enters the issue of college costs for the Evans' adult son and daughter. The Debtor shows $30,000.00 devoted annually to repayment of a portion of his son's student loan and payment of his daughter's tuition at Cornell University in Ithaca, New York (with 90% of these funds devoted to the latter). An analogy can be made to a court facing the issue of disposable income under 11 U.S.C. § 1325(b). In such cases the court must decide whether expenses for private school tuition is appropriate. Generally courts have, in the absence of special circumstances, found such expenses not reasonably necessary for maintenance and support of dependents. *See*, Keith M. Lundin, Chapter 13 Bankruptcy § 165.1, at 165–39–165–42 (3rd Edition 2004). As noted in the case of *In re Meler*, 295 B.R. 625, 630 (D.Ariz.2003), it is a thorny issue that pits payment of tuition for an adult child against repayment of creditors. Under the circumstances presented here, the court finds payment of the Debtor's daughter's tuition excessive and repayment of his adult son's student loan ahead of all other creditors similarly situated doubly excessive. But, there is no general rule that payment of private school tuition is excessive in every case, and each situation must be examined according to the circumstances presented.

**4. Whether the Debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition.**— Here the Debtor made a grave error when he filed Schedule A showing the value of his home located at 4714 Chevy Chase Boulevard in Chevy Chase, Maryland, as being $420,580.00, subject to a lien securing a debt of $468,000.00. The day before this hearing took place, an Amended

Schedule A was filed scheduling a value of $750,000.00. In short, Debtor admits that he and his wife live in a home with nearly $300,000.00 in equity. This was not disclosed until the last moment. Because of the presence of this equity, the Debtor caused any unsecured joint debts of his wife and himself to be paid, thus getting out from under the threat of a Chapter 7 Trustee selling the home pursuant to 11 U.S.C. § 363(h), the doctrine as applied in the case of *Sumy v. Schlossberg,* 777 F.2d 921 (C.A.4 1985). Perhaps the Debtor felt that by grossly understating his home's value the Trustee would not press him and file a motion under 707(b). In any event, the last minute amendment accomplished nothing. As with cases involving a denial of discharge, a later amendment does not negate any inference drawn from the earlier rendition. See *In re Sholdra,* 249 F.3d 380, 382 (C.A.5 2001), *Mazer v. United States,* 298 F.2d 579, 582 (C.A.7 1962), *In re Smith,* 161 B.R. 989, 992 (Bankr. E.D.Ark.1993). The court finds as well that the information supplied as to the earnings of Mrs. Evans was not clear and probably incomplete.

5. **Whether the petition was filed in good faith.**—Here the court finds, to the extent that it can accurately make a finding of the Evans' inner thoughts, that the petition was filed in good faith. The petition was filed with the advice of counsel, and the pre-filing activities also were accomplished presumably with the advice of counsel. The court has had the opportunity to observe Edwin and Nancy Evans. Their testimony was honest and straightforward at all times. They appear to be hard-working people with Mr. Evans doing as well as he could in a shrinking industry and Mrs. Evans engaged in activities that are more rewarding to the community than to the Evans family finances.

This is a close case, however, considering the totality of the circumstances, including pre-filing planning of the Debtor, the careful selection of creditors who would be paid, the understatement of the value of the residence and the dedication of $30,000.00 a year to the educational expenses of adult children, the United States Trustee has sustained his burden and overcome the presumption in favor of granting a discharge. In sum a Chapter 7 discharge would be a substantial abuse of the provisions of chapter 7.

The court will enter an appropriate order after December 1, 2004, to enable the Debtor, should he elect to do so, to convert this case to a case under Chapter 13. His burden in Chapter 13 would be to devote his disposable income to a plan for a three-year period.